**Robert C. SPRATT, Plaintiff,**

v.

**COUNTY OF KENT, Philip J. Heffron, Sheriff, A. Thomas Palmer, and Roland Tanis, Defendants.**

**No. G81–817 CA.**

United States District Court, W.D. Michigan, S.D.

Nov. 12, 1985.

Robert A. Yingst, Berrien Springs, Mich., for plaintiff.

Shelia A. Kinney, Clary, Nantz, Wood, Hoffius, Rankin & Cooper, Sheila A. Kinney, Grand Rapids, Mich., for defendants.

## OPINION

BENJAMIN F. GIBSON, District Judge.

### FINDINGS OF FACT and CONCLUSIONS OF LAW

Plaintiff claims that he was unjustly discharged from his employment as a social worker for Kent County because of his religious beliefs. He claims that his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, have been violated. He also claims, under 42 U.S.C. §§ 1983 and 1985, that defendants deprived him of his constitutional rights to equal protection and freedom of religion and speech.

### I. FINDINGS OF FACT

Set forth below are the Court's general findings of fact. Findings relating specifically to plaintiff's legal theories are incorporated into the Court's discussion of those theories.

1. Plaintiff Robert Spratt is a citizen of the United States of America and a resident of the State of Michigan.

2. Plaintiff obtained a Bachelor of Science Degree and a Masters Degree in Social Sciences from Michigan State University.

3. Plaintiff was employed by Kent County as a counselor to provide counseling and therapy for inmates at the Kent County Honor Camp and was later transferred to the Jail to provide the same service for those inmates.

4. Plaintiff describes himself as a "Pentecostal Christian." Such individuals, according to plaintiff, belong to different Christian churches and denominations or belong to no particular denomination. They are tied together, plaintiff explained, by their belief that the Gifts of the Holy Spirit are alive today. Plaintiff described Pentecostal Christianity as a "belief system." Plaintiff explained that he is an "evangelist" who attempts to spread the Gospel whenever the opportunity presents itself. In the Court's judgment, plaintiff is very sincere in his beliefs.

5. Plaintiff filed a charge against defendants with the EEOC and received his right to sue letter on August 7, 1981. Thereupon, and in a timely fashion, he filed his complaint with this Court.

6. Defendant Philip Heffron is, and was at all times pertinent to this litigation, Sheriff of the County of Kent, a municipal corporation in the State of Michigan.

7. Defendant Roland Tanis is a resident of the State of Michigan who, at all times pertinent to this litigation, was employed at the Kent County Sheriff's Department.

8. Defendant A. Thomas Palmer, at all times pertinent to this litigation, was a County paid lieutenant of the Kent County Sheriff's Department who directed the Inmate Services Program at the Kent County Correctional Facility.

9. While employed as a social worker for Kent County and assigned to the Kent County Jail, plaintiff used a counseling technique which he described as "treatment by spiritual means." According to plaintiff, this treatment modality is a means of allowing the spirit of God to administer to both the counselor and counselee. Among the specific techniques used by plaintiff were Bible reading, prayer, addressing spiritual issues, and, in at least one instance, the "casting out of demons."

10. Plaintiff explained that, when initiating therapy with an inmate, he generally spent the first few sessions diagnosing whether the inmate suffered any mental illnesses (the predominant ones he encountered being depression and anxiety). He would then present to the inmate various means by which the illness could be treated. One of the options suggested was treatment by spiritual means.

11. Plaintiff testified that he only treated by spiritual means when an inmate requested that particular treatment modality. When asked whether he used any encouragement with respect to the different options, plaintiff responded that he did in some cases but not as a general rule.

12. Plaintiff was first employed by Kent County at the Honors Camp, a youth correctional facility. Sheriff Heffron transferred plaintiff from his assignment in the Honors Camp to the Kent County Jail in September of 1978. Sheriff Heffron decided to transfer plaintiff because plaintiff's evangelically religious methods of counseling had alienated many of the youths at the camp. It is not clear whether the reason for the transfer was made clear to plaintiff.

13. Plaintiff admits that Lieutenant Palmer told him immediately after the transfer to the jail that he was not to carry his Bible into the jail. Plaintiff complied with this requirement by bringing some inmates into his office for counseling where he freely used the Bible.

14. Sheriff Heffron testified that the County makes provision for the spiritual needs of inmates by having available a corp of chaplains from various faiths. Those chaplains are not paid by the County. Sheriff Heffron has established a policy that does not permit county paid social workers to use religious counseling because he believes he is constitutionally

compelled to maintain an atmosphere of religious neutrality within the jail.

15. According to Sheriff Heffron, plaintiff was advised when he came to work full time at the jail that he was not to intermix religious counseling with psychological counseling, but was to refer requests for religious counseling to the chaplains at the jail. The Sheriff's policy forbidding treatment by spiritual means, even when requested by an inmate, was made known to all counselors employed at the jail.

Plaintiff testified that he was never told absolutely that he was not to use treatment by spiritual means. He testified that Sheriff Heffron told him to use it only as a last resort and to use it discretely. Sheriff Heffron denied that he made such statements.

The Court resolves this conflict in the evidence in defendants' favor. Sheriff Heffron and Lieutenant A. Thomas Palmer both testified that plaintiff was advised to cease his religious counseling when he came to the jail. Based on other inconsistencies in plaintiff's testimony, the Court concludes that plaintiff's denial of such advice is based on selective recall and that plaintiff's testimony in this regard is not credible.

16. At a meeting in April of 1979 with plaintiff, Sheriff Heffron expressed concern regarding complaints from women inmates that plaintiff was using religious counseling. The sheriff advised plaintiff that one reason such counseling was inappropriate was that, as sheriff, he could be sued by inmates who were offended by plaintiff's practices. The Sheriff testified that he told plaintiff to cease his religious counseling. In plaintiff's version of this meeting, Sheriff Heffron did not absolutely prohibit him from using religious counseling, but merely advised him to be discrete about it. Again, the Court finds the sheriff's testimony to be more credible.

17. Plaintiff's case work supervisor at the jail was defendant Roland Tanis. Plaintiff admitted that he had difficulty accepting Tanis as his supervisor because he considered his academic credentials to be superior to those of Tanis. At a meeting held in April of 1979, Sheriff Heffron clarified for plaintiff the fact that Tanis was and would be his supervisor and that Tanis had the ultimate authority to determine the type of counseling service inmates were to receive.

18. Plaintiff was suspended for five days on December 17, 1979, for insubordination. That suspension resulted from a complaint from the mother of an inmate after plaintiff had purportedly cast a demon out of her son. In the suspension notice, Sheriff Heffron advised plaintiff he was being suspended "because of continuing complaints that you are using religion in your psychological counseling, after being informed that it was not in the best interests of this Department, or the inmate being counseled, to do so."

19. Plaintiff grieved his suspension. The grievance was denied. Plaintiff was advised that the County would not permit him to introduce or use his religious beliefs or practices as part of his counseling techniques and that failure to adhere to that direction would result in his discharge.

20. The issue of Tanis's supervision was again brought out at a January 18, 1980, meeting attended by plaintiff, Sheriff Heffron, Roland Tanis, Lieutenant Palmer, and plaintiff's minister. At that meeting, Sheriff Heffron reiterated that Tanis was and would be plaintiff's casework supervisor and that plaintiff should not use his Bible in counseling.

21. At one point, plaintiff attempted to convince the Kent County Community Mental Health Department to write into the job description of the counselor assigned to the jail a statement that counseling by spiritual means would be appropriate. Plaintiff also suggested to the Sheriff that, in order to allow plaintiff to continue spiritual counseling, the County should take out malpractice insurance to protect itself from the liability that might arise if an inmate sued the County because of plaintiff's counseling methods.

22. On February 26, 1980, plaintiff was reprimanded for using waiver forms that he drew up to obtain the consent of inmates to treat them by spiritual means. Plaintiff had not obtained approval from any of his superiors for use of the forms.

23. Sheriff Heffron fired plaintiff on that same day for insubordination. In his termination letter, Sheriff Heffron advised plaintiff that he was being terminated because he "continued to practice an improper mix of religion and psychological counseling" and did not "have a desire or willingness to follow the direction given to [him]. . . ."

24. Plaintiff admitted that he was insubordinate on the issue of reading the Bible and praying with inmates. He stated that it would have been a violation of his religious beliefs to refuse to do these things under the circumstances.

25. When asked whether he ever made any effort to accommodate plaintiff's religious beliefs, Lt. Palmer stated that he had not because those beliefs did not "fit in" with the job plaintiff was hired to perform. Lt. Palmer testified that Sheriff Heffron had a policy that counselors simply could not use religion in their counseling.

Similarly, Sheriff Heffron opined that accommodation was not possible in plaintiff's case. He explained that he felt he was compelled by law not to allow religious counseling by a county social worker. He did not ask plaintiff to shed his Christian beliefs when he came to work, but he did ask him to leave them out of his counseling. Sheriff Heffron testified that he gave some thought to means to accommodate plaintiff's religious beliefs but concluded that the only solution was to absolutely prohibit religious counseling.

26. Dr. Alcid Pellitier, who has a masters degree in psychology and a doctorate in education, opined that religion may, in some circumstances, be an appropriate part of the counseling process because counselors "use whatever the patient gives us." Dr. Pelliter added that, if the patient was not religious, it would be improper for a therapist to impose his or her religion on the patient.

27. At one point, plaintiff testified that it is not possible to separate his religious beliefs from his role as a counselor. Yet plaintiff also testified that his religion does not require him to read the Bible or pray with co-workers. He testified further that it was not inconsistent with his religious beliefs to give non-religious treatment if that is what the inmate asked for. At one point, plaintiff explained that treatment by spiritual means was not the practice of his religion, but was a practice of mental health counseling.

28. Plaintiff's testimony regarding the circumstances under which he used treatment by spiritual means was somewhat contradictory. The Court concludes from the totality of his testimony that plaintiff did in fact use his position as a counselor in the Kent County Jail to evangelize. Although plaintiff would not have forced treatment by spiritual means upon an unbelieving inmate who rejected that approach, he would have strongly encouraged treatment by spiritual means for any inmate who was at all receptive. Further, based on plaintiff's continuing acts of insubordination, Sheriff Heffron and the other defendants had every reason to believe plaintiff would continue his practice of treating by spiritual means.

29. The Court finds that with respect to the establishment and enforcement of his policy prohibiting religious counseling by County social workers, defendant Heffron acted with good faith belief that such policy was compelled by law. This good faith extended to each of defendant Heffron's actions toward plaintiff. Additionally, defendant Heffron set and enforced this policy and took each of his actions toward plaintiff solely in his official capacity as the Sheriff of the County of Kent.

30. At one point, the sheriff sought legal advise regarding his dealings with plaintiff. The opinion of the County's legal counsel, given to the County Personnel Director and the sheriff, stated that the sheriff's policy was necessary to safeguard in-

mates' religious freedom rights and to comply with constitutional requirements of governmental religious neutrality.

31. Defendant Palmer's actions pertaining to plaintiff were also motivated by good faith, without malice, and were taken only pursuant to his responsibilities as the Director of the Inmate Services Program at the Kent County Correctional Facility. In that position he was responsible for implementing the sheriff's policies and directives. He had no authority to disregard or alter the sheriff's policy in order to accommodate plaintiff or anyone else.

32. The Court finds no credible evidence that defendant Tanis was motivated in his actions pertaining to plaintiff except by a good faith intent to obey Lt. Palmer's directives that he supervise plaintiff's caseload and report his findings.

33. Plaintiff failed to prove that any of the individual defendants had animus toward Christians, Pentecostal Christians, Pentecostal Christian counselors who seek to treat by spiritual means, or toward any other religious group in which plaintiff claims membership.

## II. CONCLUSIONS OF LAW

Plaintiff has raised statutory claims of discrimination under Title VII as well as constitutional claims under 42 U.S.C. §§ 1983 and 1985. The Court will address these issues seriatim.

## A. TITLE VII CLAIMS

█ Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides that an employer may not "discharge any individual ... because of such individual's ... religion." 42 U.S.C.A. § 2000e–2(a)(1) (1981). Section 701 further explains that

[t]he term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business. 42 U.S.C.A. § 2000e(j) (1981).

Defendants argue that they have not violated Title VII in this case because: 1) plaintiff has failed to establish a bona fide religious belief, *see Yott v. North American Rockwell Corp.,* 602 F.2d 904 (9th Cir. 1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1316, 63 L.Ed.2d 761 (1980); 2) plaintiff was not qualified to perform the job for which the county hired him because he was not able to follow the direct orders of his supervisors, *see Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); 3) the County had a legitimate, nondiscriminatory reason for plaintiff's discharge, namely his insubordination, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–806, 93 S.Ct. 1817, 1824–1826, 36 L.Ed.2d 668 (1973); and 4) the County accommodated plaintiff's religious beliefs to the extent it was possible to do so in these circumstances, *see Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 84, 97 S.Ct. 2264, 2276, 53 L.Ed.2d 113 (1977). Because the Court finds for defendants on the latter argument, it need not address the first three arguments.[1]

The issue raised in this case is different than that raised in a typical accommodation case where an employee is requesting an adjustment in his work schedule to permit him to observe his sabbath. Here the religious practice for which plaintiff was seeking accommodation was a religiously compelled need, when called upon, to engage in prayer and the quoting of scripture.[2] It

---

1. Defendants have also argued that the accommodation provision of Title VII is unconstitutional. The Court finds it unnecessary to rule on the constitutionality issue in light of its finding that any accommodation obligation imposed on the County has been met.

2. The Court has not resolved whether plaintiff's practice of praying with and reading scripture

to inmates was a "religious practice." Different portions of plaintiff's testimony give conflicting views on this issue. Plaintiff testified at one point that he was religiously compelled to pray and share scripture with inmates who requested him to do so. At other points in his testimony, plaintiff said that his use of treatment by spiritual means was *not* a practice of religion but a

appears, and the Sheriff could certainly conclude, that plaintiff's religious beliefs also compelled him to engage, to some extent, in evangelizing. That is, if an inmate was at all receptive to plaintiff's suggestion that treatment by spiritual means was indicated, the evidence suggests that plaintiff would have strongly urged the inmate to accept that form of treatment.

Considering the facts of this case and the constitutional law in the area of religious practice in public institutions, the Court concludes that Sheriff Heffron had very limited flexibility with which to accommodate plaintiff's religious practices. The sheriff had an obligation under the establishment clause of the constitution to maintain a policy of neutrality on religious matters. *See Wallace v. Jaffree,* —— U.S. ——, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985); *Meek v. Pittenger,* 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975); *Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). He was required to avoid the appearance of favoring one religion over others or religion over nonreligion. At the same time, Sheriff Heffron had an obligation to allow for the free religious exercise of the inmates. *See, e.g., Hoggro v. Pontesso,* 456 F.2d 917, 918 (10th Cir.1972); *Cooper v. Pate,* 382 F.2d 518, 521 (7th Cir.1967). Sheriff Heffron chose to walk the narrow line between the free exercise and establishment clauses by forbidding county paid social workers from using religious counseling techniques while, at the same time, allowing inmates access to voluntary chaplains of all faiths who serviced the jail.

Within these narrow straits, the sheriff made what this Court considers to be reasonable efforts to accommodate plaintiff's religious practices. He advised plaintiff that he had a policy that prohibited the county social workers from using religious counseling techniques. He warned plaintiff repeatedly when he discovered that plaintiff was crossing the line that his policy had drawn. Sheriff Heffron also asked for legal advice to determine whether plaintiff's religious needs could be accommodated. Finally, he gave plaintiff numerous opportunities to change his practices. The Court concludes that defendant County, acting through Sheriff Heffron, made every effort at accommodation reasonably available under the circumstances. *See Trans World Airlines, Inc. v. Hardison,* 432 U.S. at 84, 97 S.Ct. at 2276 (1977) (employer need not take actions that would adversely affect others or bear more than a *de minimis* cost in order to accommodate an employee's religious practices); *McDaniel v. Essex International,* 571 F.2d 338, 344 (6th Cir.1978); *Baz v. Walters,* 599 F.Supp. 614 (D.C.Ill.1984) (discharge of government chaplain appropriate when chaplain continued to evangelize and proselytize against orders). Accordingly, plaintiff has not proven a violation of Title VII.

## B. CONSTITUTIONAL CLAIMS

### 1. First Amendment

The first amendment to the Constitution provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." U.S. Const., amend. I. Because the first amendment applies with equal force to the states, *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), its two mandates apply to state and local governments.

■ Although plaintiff has raised a claim under the free exercise clause, both the establishment clause and the free exercise clause must be considered in evaluating his first amendment claim. Administrators of public institutions, such as schools and prisons, are required to balance the first amendment rights of their employees to freely exercise their religions against the first amendment's prohibition on the "establishment" of religion and against the free exercise rights of other

---

practice of mental health counseling. For purposes of plaintiff's Title VII arguments, the Court will assume arguendo that his praying and sharing scripture with inmates was a religious practice.

individuals. *See, e.g., Lynch v. Indiana State University Board of Trustees,* 177 Ind.App. 172, 378 N.E.2d 900, 905 (Ind.), *cert. denied,* 441 U.S. 946, 99 S.Ct. 2166, 60 L.Ed.2d 1048 (1978) (finding no constitutional violation when public school dismissed instructor who insisted on reading the Bible to his students in the classroom).

■ Here, plaintiff has asserted a first amendment right to freely practice his religious beliefs. The Court does not deny that plaintiff has certain rights to practice his religion freely in our society. When, however, exercise of an individual's first amendment rights potentially violates free exercise rights of others or the mandates of the establishment clause, the individual's rights are not absolute. *See Bender v. Williamsport Area School District,* 741 F.2d 538, 550 (3d Cir.1984), *cert. granted,* — U.S. —, 105 S.Ct. 1167, 84 L.Ed.2d 319 (1985). On the facts of this case, the Court concludes that plaintiff's constitutional right to the free exercise of his religion does not go so far as to permit him to use religious counseling methods against the orders of his superiors.

■ It has been held that the practice of permitting lay witnesses to enter jail cell blocks for the purpose of preaching, singing, and witnessing to inmates violates the free exercise rights of prisoners who do not wish to hear the message if no efforts are made to ensure that those inmates are not present. *Campbell v. Cauthron,* 623 F.2d 503, 509 (8th Cir.1980). The free exercise clause requires that no inmate be subjected to force indoctrination. 623 F.2d at 509.

This same rationale would prohibit plaintiff's conduct in this case. Here, evidence suggests that, although plaintiff did not overtly coerce inmates into accepting religious counseling, he suggested to at least some inmates that treatment by spiritual means was the preferred method of treatment. Thus, there was a danger of forced indoctrination.

Further, the facts of this case are even stronger than those of *Campbell* because the establishment clause is implicated as well. Here, rather than having lay witnessing by individuals outside the jail staff, the individual bringing the religious message to the inmates was an employee of the county. Thus, the County could be accused of violating the establishment clause. *See Lynch v. Indiana State University Board of Trustees,* 378 N.E.2d at 908.

The Court concludes that plaintiff's use of religious counseling was potentially violative of the establishment clause and the free exercise rights of inmates. Because plaintiff's free exercise rights must be limited to the extent that his conduct would infringe upon the establishment clause or constitutional rights of others, he cannot assert a constitutional right to continue such conduct. *Cf. O'Malley v. Brierly,* 477 F.2d 785, 789 (3d Cir.1973) (priests had no absolute right under the free exercise clause to give religious counseling to inmates).

■ Similarly, any claims that plaintiff could make under the free speech clause of the first amendment must fail as well. In the public employment context, once an employee asserts a free speech right, the Court must determine whether the employer's curtailment of plaintiff's speech results from the need to protect a compelling state interest. *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). That compelling interest exists here. The County is not required to let plaintiff speak on religious issues if that speech violates the establishment clause or the free exercise rights of inmates.

2. Equal Protection

■ Plaintiff has not carried the burden of proving an equal protection violation. No evidence was presented to suggest that plaintiff was disciplined and ultimately fired because he was a Christian or a Pentecostal Christian. The weight of evidence suggests that Sheriff Heffron and the other defendants applied the sheriff's policy prohibiting religious counseling to all counselors, irregardless of religion. Because plaintiff has not proven that he was

treated in a particular way because he was a member of an identifiable class, his equal protection claim must fail. *See Massachusetts v. Feeney,* 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (gender); *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (race); *Brown v. Alexander,* 718 F.2d 1417 (6th Cir.1983) (membership in a particular union); *Rodgers v. Tolson,* 582 F.2d 315 (4th Cir.1978) (member of a group of residents who had criticized city commissioners).[3]

### 3. Conspiracy

In addition to his claims under 42 U.S.C. § 1983, plaintiff has raised a claim under 42 U.S.C. § 1985(3) alleging a conspiracy on the part of the individual defendants to deprive plaintiff of his constitutional rights. Just as plaintiff has failed to establish an identifiable class for the purposes of his 1983 equal protection claim, he has similarly failed to establish the class-based invidiously discriminatory animus necessary to support a claim under section 1985. *Macko v. Brian,* 641 F.2d 447, 450 (6th Cir.1981). Thus, this claim fails.

---

**3.** Although plaintiff originally stated a claim that his due process rights were violated, because he did not raise that claim at trial or in his post-trial filings, the Court presumes that it has been dropped.