Isaiah BROWN, Appellant,

v.

POLK COUNTY, Iowa, a Municipal Corporation; Ray Sears, Former County Administrator for Polk County; Polk County Board of Supervisors, Appellees.

No. 93–3313.

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1994.

Decided Oct. 6, 1994.

Rehearing En Banc Granted; Opinion and Judgment Vacated Nov. 25, 1994.

Robert A. Wright, Jr. Des Moines, IA, argued (Nathan W. Kellum and Stephen M. Crampton, Tupelo, MS, on the brief), for appellant.

Mark Godwin, Des Moines, IA, argued, for appellee.

Before FAGG, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

FAGG, Circuit Judge.

Isaiah Brown is a black man who describes himself as a born-again Christian. After Polk County terminated his employment as director of the County's Information Services Department (ISD), Brown brought this action against Polk County, the Polk County Board of Supervisors, and his former supervisor, County Administrator Ray Sears (collectively Polk County). Brown alleged Polk County violated Title VII by terminating him because of his race and his religion. Brown also brought 42 U.S.C. § 1983 claims alleging Polk County violated his First Amendment rights of freedom of expression and freedom of religion. Following a bench trial, the district court held Brown failed to show Polk County violated Title VII or 42 U.S.C. § 1983. *Brown v. Polk County,* 832 F.Supp. 1305, 1316 (S.D.Iowa 1993). Brown appeals and we affirm.

The district court explained the facts of this case in detail, *see id.* at 1308–10, and we will only summarize them here. Brown was promoted to ISD director in 1986. In this capacity, Brown was responsible for planning and organizing Polk County's data processing operations and supervising about fifty data processing employees. Ray Sears, Brown's immediate supervisor, reviewed Brown's performance annually. Brown's evaluations were mixed and reflected Sears's concern about scheduling and departmental morale. Under Brown's command, the ISD was far behind schedule. The mismanagement was so significant that Polk County hired an outside consultant to review the department. The consultant recommended a total departmental restructuring, which involved eliminating eleven positions and laying off twenty-five employees.

There was a rift in the ISD between the employees who were born-again Christians like Brown and the employees who were not. Beginning in 1985, Brown had held Bible study meetings with employees before work in the Polk County Administration building. The Bible study later stopped, but the group still met to pray or talk in Brown's office. Those who were not born-again Christians believed Brown would terminate them during the restructuring because they did not share his faith. After hearing this rumor, Brown held a departmental meeting and told the employees he would not consider an employee's religious views when making the termination decisions. After the restructuring, Brown met with the rehired employees in May 1990. Referring to his Bible study,

Brown told the employees they should work hard as the Bible directed and not be slothful.

The County Personnel Department and County Administrator received complaints in summer 1990 about inappropriate religious activities in the ISD. At Sears's request, the County Labor Relations Manager investigated the complaints. The manager's report stated Brown held prayer meetings, performed religious counseling, and had his secretary type Bible study notes. Based on the report, Sears reprimanded Brown in writing in July 1990, ordering Brown to end his use of County resources to support a religious organization.

When Sears later visited Brown's office for a systems development review committee meeting, Sears saw some religious objects. According to Brown, Sears told him to "take away the things on your wall and on your desk that may be considered offensive to employees." Brown complied without protest. Brown testified that because he wanted to comply, he removed his Bible from a desk drawer and asked Sears about it. Sears said, "That goes, too." Because Sears told Brown to keep the entire ISD free of religious materials, another employee also removed personal religious items. Brown's management problems continued. In December 1990, the ISD was investigated again after sexually explicit material and personal games were discovered on employees' computers.

Noting Polk County's duty to ensure its administrators remain neutral about religious matters, the district court balanced Brown's First Amendment rights against the First Amendment's prohibition on the establishment of religion and the free exercise rights of Brown's co-employees. The district court concluded neither the free exercise nor free expression guarantees protected Brown's religious activity on County time or with County facilities. 832 F.Supp. at 1315–16. The district court further held the removed items did not constitute the type of symbolic expression protected by the First Amendment, and Brown failed to show the removal of religious items from his office inhibited his ability to exercise his religion freely. *Id.* at 1316.

In challenging the district court's decision that Polk County did not violate his First Amendment rights, Brown does not dispute the district court's factual findings, but attacks the district court's analysis and legal conclusions. Citing *Hall v. Ford,* 856 F.2d 255, 262–63 (D.C.Cir.1988), a free speech case, Brown asserts he need only show his employment was conditioned on the compromise of a constitutional right. Brown seems to assert his free speech and free exercise rights are absolute. Later, Brown argues that to overcome his First Amendment rights, the government must show it had a compelling interest and it used the least restrictive means of achieving its compelling interest. *Thomas v. Review Bd. of the Ind. Employment Sec. Div.,* 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981) (strict scrutiny standard). Thus, we must decide which legal standards apply to a public employee's free speech and free exercise claims.

 The legal standard controlling Brown's free speech claim is clear. Although government employees do not relinquish their free speech rights as a condition of public employment, the First Amendment is not a license for interference with the proper functioning of the workplace. *Connick v. Myers,* 461 U.S. 138, 140, 103 S.Ct. 1684, 1686, 75 L.Ed.2d 708 (1983); *see Grantham v. Trickey,* 21 F.3d 289, 292 (8th Cir.1994). The government's legitimate interest in regulating speech is greater for public employees than for general citizens. *See Connick,* 461 U.S. at 140, 103 S.Ct. at 1686. The government has a strong interest in avoiding the interference of employee speech with work, personnel relationships, and the employee's job performance. *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987). To decide what regulation of a public employee's speech is constitutionally permissible, a court balances on a case-by-case basis the employee's interest as a citizen in commenting on matters of public concern and the government's interest as an employer in promoting efficient public services. *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d

811 (1968); *Shands v. City of Kennett,* 993 F.2d 1337, 1344–46 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 880, —— L.Ed.2d —— (1994). This balancing accommodates the public employer's dual role as a public service provider and a government entity operating under the First Amendment's constraints.

Brown's reliance on *Hall* for an absolute free speech right is misplaced. Brown selectively quotes general language stating the government cannot condition employment on the compromise of a constitutional right. *Hall,* 856 F.2d at 262. In the very next sentence, however, the court in *Hall* explained this principle is limited by the government's legitimate interest in efficient operations. *Id.* at 263. Brown's failure to acknowledge this legitimate limitation is the basic flaw pervading his First Amendment arguments.

■ Having identified the controlling standard, we turn to the merits of Brown's free speech claim. Brown asserts Polk County violated his right to free speech by directing him to refrain from prayer and stating his Christian beliefs. We think Brown reads Polk County's directive too broadly. The written reprimand directed Brown to stop using Polk County resources to support and promote a religious organization, and to ensure the work environment was free of religious proselytizing, witnessing, and counseling. This language does not encompass Brown's private prayers, or Brown's activities off County time or property.

' Brown asserts his speech is a matter of public concern, but we need not decide this preliminary issue. Because the district court balanced the interests of Brown and Polk County, the court presumed Brown's speech was a matter of public concern. *See Connick,* 461 U.S. at 149, 103 S.Ct. at 1691. After weighing the interests of Polk County and Brown, the district court concluded Polk County did not violate Brown's free speech rights. We agree. Under Brown's leadership, the ISD was having significant problems with inefficiency, employee morale, and general mismanagement, and these problems were related to Brown's religious speech. In this case, Polk County's interest in efficient operations outweighs Brown's interest in expressing his religious beliefs to his subordinates at work. Finally, even if the religious items removed from Brown's office were protected symbolic expression, the same balancing analysis applies and defeats Brown.

■ We now consider the legal standard applicable to Brown's free exercise claim. The Supreme Court has long recognized a distinction between the freedom of individual religious belief and the freedom of individual religious conduct. *Bowen v. Roy,* 476 U.S. 693, 699, 106 S.Ct. 2147, 2151–52, 90 L.Ed.2d 735 (1986). Under the Free Exercise Clause, an individual's freedom of belief is absolute, but an individual's freedom of conduct is not. *Id.* In other words, individuals do not have an absolute right to practice their chosen religion as they please. *Rushton v. Nebraska Pub. Power Dist.,* 844 F.2d 562, 564 (8th Cir.1988). Beyond this point, however, the law is less clear. The Supreme Court has never identified a legal analysis governing whether an adverse employment action infringes a public employee's right to free exercise of religion. Although we apply a *Pickering* balancing analysis in the context of public employees and free speech, it is unclear what analysis applies in the context of public employees and free exercise of religion. Brown believes the district court should have used a general strict scrutiny analysis.

■ The right to free exercise of religion is a fundamental constitutional right. *Johnson v. Robison,* 415 U.S. 361, 375 n. 14, 94 S.Ct. 1160, 1169 n. 14, 39 L.Ed.2d 389 (1974). As a general rule, a governmental action or regulation that burdens fundamental constitutional rights is strictly scrutinized. *Austin v. Michigan Chamber of Commerce,* 494 U.S. 652, 666, 110 S.Ct. 1391, 1400–01, 108 L.Ed.2d 652 (1990). To pass constitutional muster, the action or regulation must be narrowly tailored to serve a compelling governmental interest. *Id.* Courts of Appeals have applied the general strict scrutiny test to public employees' claims that their public employers' actions have infringed their fundamental constitutional rights to expres-

sive association and intimate association. See McCabe v. Sharrett, 12 F.3d 1558, 1566 (11th Cir.1994) (discussing cases). Despite the general rule, however, the Supreme Court does not strictly scrutinize public employers' restrictions on certain fundamental constitutional rights of public employees. As we have already explained, the Supreme Court uses a special analysis when examining restrictions on public employee expression. See supra at 407–408. The Supreme Court has also devised a special analysis for reviewing adverse public employment decisions made for political patronage reasons. See Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

We have applied the strict scrutiny analysis to free exercise challenges to governmental action outside the public employment context. E.g., Murphy v. State of Arkansas, 852 F.2d 1039, 1041 (8th Cir.1988) (reviewing free exercise challenge to Arkansas Home School Act). In the absence of any challenge to the strict scrutiny standard, we once applied the standard to decide whether public employees should receive an exemption from a drug-testing program on religious grounds. Rushton, 844 F.2d at 563–64. On the other hand, we have recognized that regulations limiting fundamental rights are reviewed more deferentially when applied to public employees than when applied to ordinary citizens. Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1408 (8th Cir.1990).

■ In the context of state employees claiming infringement of their right to free exercise of religion, courts have applied a modified Pickering analysis to account for the state's duty under the Establishment Clause to ensure its employees do not encourage or promote one religion over other religions or any religion over nonreligion. See County of Allegheny v. American Civil Liberties Union, 492 U.S. 573, 593–94, 109 S.Ct. 3086, 3100–02, 106 L.Ed.2d 472 (1989) (explaining state's duty). These courts balance the public employee's free exercise rights against the state's duties to avoid Establishment Clause violations and to protect the religious beliefs of other public employ-

ees. See, e.g., Langlotz v. Picciano, 683 F.Supp. 1041, 1048 (E.D.Va.1988), aff'd, 905 F.2d 1530 (4th Cir.1990) (unpublished opinion); Spratt v. County of Kent, 621 F.Supp. 594, 600–01 (W.D.Mich.1985), aff'd, 810 F.2d 203 (6th Cir.1986) (unpublished opinion), cert. denied, 480 U.S. 934, 107 S.Ct. 1574, 94 L.Ed.2d 766 (1987). This is the test that the district court applied in Brown's case. See 832 F.Supp. at 1315–16.

In our view, the modified Pickering analysis is more appropriate than a general strict scrutiny analysis in this case. To the extent that the Pickering analysis is viewed as more deferential to the public employer than a general strict scrutiny analysis, we see no reason to defer when fundamental speech or political affiliation rights are involved but not when free exercise rights are at stake. See McCabe, 12 F.3d at 1567. Pickering's rationale—that the government as an employer has a special interest in regulating its employees' behavior to avoid the disruption of public functions—applies to free exercise rights as well as free speech rights. See id. at 1568. Courts have applied a Pickering analysis outside the speech context in cases involving expressive association rights, liberty rights, and free exercise rights. See id. at 1568–69 (discussing cases); Langlotz, 683 F.Supp. at 1048. Application of the modified Pickering analysis in this case takes into account the disruptive potential of Brown's open free exercise conduct in the workplace, see McCabe, 12 F.3d at 1567, and best considers the tension Polk County faced between not establishing or promoting religion and not inhibiting its practice. We thus conclude the district court applied the proper legal analysis to Brown's free exercise claim.

■ Brown contends Polk County violated the Free Exercise Clause by restricting his right to believe and profess. Again, Brown misreads Polk County's directive. In reprimanding Brown, Polk County sought to limit only Brown's conduct, not his belief. The district court weighed the competing interests of Brown and Polk County and concluded Polk County did not violate Brown's free exercise right by restricting his religious conduct on County time and property. 832 F.Supp. at 1315–16. Given Polk

County's duties to avoid an Establishment Clause violation and protect the free exercise rights of employees other than Brown, Brown's status as a supervisor of fifty employees, and the adverse effects of Brown's religious conduct in the workplace, we agree with the district court that the balance of interests tips in Polk County's favor under the circumstances presented in this case.

██ Even if a strict scrutiny analysis applies as Brown contends, Polk County had an overriding compelling interest in restricting religious practices in the workplace: avoidance of an Establishment Clause violation. *Goodall by Goodall v. Stafford County Sch. Bd.,* 930 F.2d 363, 370 (4th Cir.1991). Because Brown administered many employees as the ISD's director, Polk County needed him to be neutral towards religion in the workplace to maintain the County's neutrality. *See Spratt,* 621 F.Supp. at 600–01. We reject Brown's assertion that Polk County did not use the least restrictive means of accomplishing this legitimate goal. Brown's assertion is largely based on his mischaracterization of Polk County's policy.

██ Brown also contends Polk County violated the Free Exercise Clause by asking him to remove the religious items from his office. The removal of the religious items from Brown's office does not implicate the Free Exercise Clause, however. To show a free exercise violation, a religious adherent must initially prove the challenged governmental action substantially burdens the adherent's religious practice. *Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 2148–49, 104 L.Ed.2d 766 (1989); *see Murphy,* 852 F.2d at 1041 (governmental action must interfere with sincerely held religious beliefs). The burden must be more than an inconvenience; the burden must rise to the level of pressuring the adherent to commit an act the religion forbids, or preventing the adherent from engaging in conduct that the faith requires. *Graham v. Commissioner,* 822 F.2d 844, 850–51 (9th Cir.1987), *aff'd sub nom. Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 2148–49, 104 L.Ed.2d 766 (1989). Here, the district court found Brown did not prove the removal of the religious items from his office

inhibited his ability to exercise his religion freely. 832 F.Supp. at 1316. This key finding is not clearly erroneous. Indeed, Brown did not protest Sears's instruction or otherwise indicate his born-again Christianity required him to keep a Bible in his desk and the objects on his desk and walls. Although the instruction to remove Brown's Bible in particular may have been overzealous and offensive, the district court's supported finding simply ends the free exercise inquiry. Having failed to show the removal substantially burdened his religious practice, Brown did not establish the threshold requirement for a free exercise violation.

██ As for his equal protection claim, Brown attacks the district court's finding that he was not subjected to disparate treatment in exercising his religious beliefs. *See id.* This attack is meritless. The County's policy applied to all County employees, not just Brown. We thus conclude the district court properly rejected Brown's 42 U.S.C. § 1983 claims.

We now turn to Brown's Title VII arguments. Finding no direct evidence of racial or antireligious animus, 832 F.Supp. at 1311, 1313 & n. 16, the district court applied the three-step analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to Brown's racial and religious discrimination claims. Brown contends the district court should have applied the mixed motives test of *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), because there was direct evidence of antireligious and racial animus on Polk County's part. In Brown's view, the written reprimand and Sears's instruction to remove the objects from Brown's office show improper motive. Brown's contention fails for two reasons.

██ First, Brown misunderstands his evidentiary burden. The *Price Waterhouse* test applies only if the plaintiff produces "evidence that directly reflects the use of an illegitimate criterion in the challenged decision." *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 996 F.2d 200, 202 (8th Cir.1993) (per curiam); *see id.* at 201 n. 1 (the term "direct evidence" means only that the plain-

tiff must present evidence showing a specific link between discriminatory animus and the challenged decision); *Parton v. GTE North, Inc.*, 971 F.2d 150, 153 (8th Cir.1992) (plaintiff must show employer "actually relied" on improper ground in making adverse employment decision). We agree with the district court that Brown did not produce evidence that directly shows Polk County based Brown's termination on his religion or his race.

■ Second, because this case was tried on the merits, we need not concern ourself with whether the *McDonnell Douglas* or *Price Waterhouse* test applies. *Kientzy v. McDonnell Douglas Corp.*, 990 F.2d 1051, 1060 (8th Cir.1993). Instead, we need only review the ultimate factual issue of whether Polk County intentionally discriminated against Brown on the basis of his race or religion. *See id.; Finley v. Empiregas, Inc.*, 975 F.2d 467, 473 (8th Cir.1992). After the bench trial, the district court found Brown's inadequate performance was the reason for his termination. 832 F.Supp. at 1312, 1314. We conclude the district court's ultimate finding that Polk County did not discriminate against Brown based on his race or religion is not clearly erroneous. *See Tuttle v. Henry J. Kaiser Co.*, 921 F.2d 183, 186 (8th Cir. 1990) (standard of review). Having reviewed the ultimate issue, we need not consider Brown's attack on the district court's finding that Polk County could not have accommodated Brown's religious activities and expression without undue hardship. *See* 832 F.Supp. at 1314.

We have considered all of Brown's arguments and rejected them. Accordingly, we affirm the district court.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting in part.

The court holds today that Polk County, Iowa, may lawfully order one of its employees to remove from his office all items that manifest his religious faith and, even more incredibly, may direct him to remove his Bible from his desk drawer. The district court charitably characterized this heavy-handedness as "arguably overzealous," and confessed to being "somewhat troubled" by

it. *Brown v. Polk County, Iowa,* 832 F.Supp. 1305, 1316, 1316 n. 22 (S.D.Iowa 1993). It nevertheless decided that the county's action was not unconstitutional. The court also holds today that Polk County may lawfully order one of its employees to "cease any activity that could be considered to be religious proselytizing, witnessing, or counseling" in the workplace. I cannot subscribe to these conclusions, nor to this court's failure to give proper scope and dimension to Mr. Brown's rights of religious expression.

I.

I believe that it is well established that the right to the free exercise of religion is a fundamental right. *See, e.g., Johnson v. Robison,* 415 U.S. 361, 375 n. 14, 94 S.Ct. 1160, 1169 n. 14, 39 L.Ed.2d 389 (1974). That being the case, a government must demonstrate a compelling state interest before it can inhibit that exercise. While compelling interests, like beauty, may well lie mainly in the eye of the beholder, one is hard pressed to find such an interest here. The court's identification of the county's interest in avoiding a violation of the Establishment Clause violation as sufficiently compelling impermissibly shifts the fulcrum of neutrality much too far in one direction. It simply is not an establishment of religion to allow individuals to display items of religious significance in their offices, partly because this is not an action on the part of the county (*see Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971)); and there is not even a colorable argument that a Bible in a desk (even a desk owned by the government) breaches the wall of separation that must be maintained between government and religion. Besides, if it were an establishment of religion merely to allow these kinds of activities, the county would have a complete answer to this lawsuit: It could say that it was legally compelled to issue the relevant directive, thus rendering it unnecessary to divine some so-called "interest" that the county had at stake.

One might, in the abstract (and in an appropriate case), sympathize with the defendants in the sense that it is not always easy to steer a correct course between the Scylla

and Charybdis of the Religion Clauses. But the county has not claimed qualified immunity, perhaps because of its blind inability to see any Free Exercise interests whatever at stake here, a position completely consonant with its unfeeling disregard of Mr. Brown's rights and of its own duties under the Constitution. Nor do I think that the county could have succeeded if it had claimed qualified immunity. Polk County seems to have been bent on giving government sanction to the attitude that religion is simply out of place at the office. Citizens are certainly free to believe this and, of course, absent statutory regulation to the contrary, to give effect to that principle in their voluntary associations. What they are not free to do is to enlist the aid of government in imposing such restrictions on fellow workers. The conduct of the defendants here seems to me so egregious and obviously illegal as almost to furnish direct evidence of an anti-Christian animus on their part. Mr. Brown, moreover, has asked for a declaratory judgment that the relevant order was unconstitutional, a claim that is, of course, not subject to being defeated by qualified immunity. *See, e.g., Wood v. Strickland,* 420 U.S. 308, 314–15 n. 6, 95 S.Ct. 992, 996–97 n. 6, 43 L.Ed.2d 214 (1975); *Malik v. Brown,* 16 F.3d 330, 335 n. 4 (9th Cir.1994); and *Mumford v. Zieba,* 4 F.3d 429, 435 (6th Cir.1993).

## II.

One may concede for the sake of argument that Polk County has a legal right or duty to ensure that its workplace is free from harassing behavior of a religious nature. But any interference with religious activity that the discharge of that duty entails must be reasonably related to that discharge and must be narrowly tailored to its achievement. *Thomas v. Review Board of Indiana Employment Sec.,* 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981). Here, there was not the least attempt to confine the prohibition to harassing or intimidating speech, or narrowly to define the prohibited activity. Instead, Polk County baldly directed Mr. Brown to "cease any activity that *could be considered* to be religious proselytizing, witnessing, or counseling" (emphasis supplied). This order, which the court avoids quoting directly, exhibits a hostility to religion by government that our Constitution quite clearly prohibits. It would seem to require no argument that to forbid speech "that could be considered" religious is not narrowly tailored to the aim of prohibiting harassment. If Mr. Brown asked someone to attend his church, for instance, one supposes that that "could be considered" proselytizing; but its prohibition runs afoul of the Free Exercise Clause. Likewise, a statement to the effect that one's religion was important in one's life "could be considered" witnessing; yet for government to forbid it would be unconstitutional.

The court does not directly address these arguments, but seems to indicate that the desire to avoid establishing religion provides a sufficient excuse for a complete prohibition of any activity that "could be considered religious." As I indicated above, that holding strikes the balance between the Religion Clauses in a way that trenches unconstitutionally on ground occupied by the Free Exercise Clause. Our court recently had occasion to explore the boundary between the two clauses in *Good News/Good Sports Club v. School District of the City of Ladue,* 28 F.3d 1501 (8th Cir.1994), in which the court held that allowing a religious organization the use of school premises did not amount to an establishment of religion. *Id.* at 1510. The court concluded that merely permitting someone to express a religious view was not an establishment of religion, noting that "there is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids; and *private* speech endorsing religion, which the Free Speech and Free Enterprise Clauses protect." *Id.* at 1509 (quoting *Westside Community Bd. of Ed. v. Mergens,* 496 U.S. 226, 251, 110 S.Ct. 2356, 2372–73, 110 L.Ed.2d 191 (1991)) (plurality opinion by O'Connor, J.). More succinctly, as Justice O'Connor indicated, *id.* at 250, 110 S.Ct. at 2371–72, "[t]he proposition that [governments] do not endorse everything they fail to censor is not complicated." Mr. Brown is speaking here, not Polk County.

## III.

What is most unsettling to me about this case is the antiseptic approach that the court takes to its resolution. It proceeds as though a routine application of an apolitical arithmetic could yield a scientifically ineluctable solution to the dispute that this case presents. Given the modes of constitutional analysis by which the court quite rightly deems itself bound, the court had necessarily to engage in some sort of balancing act to decide the case. So much is clear. (It is, moreover, difficult to think of rights outside a world governed by utility: A right's usefulness, at least in the abstract welfare economics sense, may well influence the scope that we give to it and the amount of nuisance that we will feel compelled to tolerate from its exercise.) But the tradition that produced our Bill of Rights was one that took rights seriously, and a healthy suspicion of government and a robust respect for individual autonomy were the values that gave that tradition shape and texture. It is this realization, and an unwillingness to act on it, that seems to me to be missing from the court's opinion. After being subjected to "balancing" and "weighing," the identification of "interests," and the application of "tests," Mr. Brown's rights are simply lost in the shuffle, impaled on some "prong," and reduced to the level of merely expendable desiderata. They ought instead to be given their proper weight as critical expressions of the proper constitutional boundary between the state and the individual.

I would reverse so much of the district court's judgment as rejected Mr. Brown's Free Exercise claims and affirm the other parts of the court's judgment from which he appeals.