The Honorable Peggy Jeffries State Senator 1122 South Waldron Road Suite "C" Fort Smith, Arkansas 72903
Dear Senator Jeffries:
This opinion is being issued in response to your recent questions regarding certain issues relating to the Board of Trustees of the Arkansas Teacher Retirement System. You have presented the following questions:
 (1) Are ex-officio members of the Arkansas Teacher Retirement System [Board of Trustees] eligible to vote on issues as are the other elected members of the Board?
 (2)(a) Is it illegal, discriminatory and/or unconstitutional for state law to specify [in A.C.A. § 24-7-301(2)(A)(ii)] that "[o]ne person other than a Caucasian" is to be elected to the Board?
 (2)(b) Is it illegal, discriminatory and/or unconstitutional for state law to specify [in A.C.A. § 24-7-301(2)(A)(ii)] that such person "shall be elected by the Arkansas Education Association"?
 (3) Is it illegal, discriminatory and/or unconstitutional for state law to specify [in A.C.A. § 24-7-301(2)(A)(iii)] that one classroom teacher must be "elected member trustee by classroom teacher members of the Arkansas Education Association"?
 (4) Is it illegal, discriminatory and/or unconstitutional for state law to specify [in A.C.A. § 24-7-301(3)(A)] that three retirants "shall be elected retirant trustees by the Arkansas Retired Teachers Association"?
 (5) Must the Board vote to employ or not to employ professional and clerical staff members?
RESPONSE
Question 1 — Are ex-officio members of the Arkansas Teacher RetirementSystem [Board of Trustees] eligible to vote on issues as are the otherelected members of the Board?
It is my opinion that ex-officio members of the Arkansas Teacher Retirement System Board of Trustees are eligible to vote on issues as are the other elected members of the Board.
I derive this conclusion from the language of A.C.A. § 24-7-304, which provides that seven members, at least one of whom is to be an ex-officio member, will constitute a quorum of the Board. The statute then goes on to provide:
 Each trustee shall be entitled to one (1) vote on each question before the board, and at least seven (7) concurring votes shall be required for a decision by the board at any meeting.
A.C.A. § 24-7-304(C).
Because the statute authorizes a seven-member quorum to take official action, and because, at the same time, it requires that one of the seven be an ex-officio member, it must be concluded that the ex-officio member is authorized to vote.
Question 2(a) — Is it illegal, discriminatory and/or unconstitutional forstate law to specify [in A.C.A. § 24-7-301(2)(A)(ii)] that "[o]ne personother than a Caucasian" is to be elected to the Board?
The answer to this question will involve certain factual considerations that my office is neither qualified nor authorized to undertake.
Claims of illegality, discrimination, and unconstitutionality relating to issues of race generally arise out of the equal protection clause of theFourteenth Amendment to the United States Constitution. The constitutional principle of equal protection prohibits classifications (i.e., the disparate treatment of similarly situated persons) that are not justifiable under the applicable standard of review.
A determination of whether a particular statute violates the equal protection doctrine requires a consideration and evaluation of the particular facts and circumstances surrounding that statute and its application. Each case will turn upon its own particular facts and circumstances. Williams v. Rhodes, 393 U.S. 23 (1968). I have not been apprised of all the facts and circumstances surrounding elections to the Board of Trustees of the Arkansas Teacher Retirement System. Moreover, only the courts are authorized to make the factual determinations upon which a constitutional ruling of this nature would be based. I therefore cannot opine conclusively as to whether the requirement in A.C.A. §24-7-301(2)(A)(ii) about which you have inquired does in fact violate the equal protection doctrine.
However, I can set forth the pertinent tests that are applied in the course of making such a determination. An awareness of these tests and their appropriate applications may be of assistance to you in assessing the situation.
There are three general steps in an equal protection analysis: (1) The identification of the classification; (2) The determination of the applicable standard of review; and (3) The determination of whether that standard has been satisfied. Martz v. Reid, 865 P.2d 999 (Idaho App. 1993).
The first step, therefore, in evaluating the question of whether A.C.A. § 24-7-301(2)(A)(ii) violates the equal protection doctrine is to determine whether it creates a "classification," i.e., whether it treats similarly situated persons or groups disparately. Brown v. Polk County,37 F.3d 404 (8th Cir. 1994). If the law or action in question applies equally to all those affected thereby, no classification has been created. Id. It might well be argued that A.C.A. § 24-7-301(2)(A)(ii) creates a classification between Caucasians who are eligible to serve on the Board and non-Caucasians who are eligible to serve on the Board. It should be noted, however, that not all classifications are unlawful.Mathews v. Lucas, 427 U.S. 495 (1976). A classification is unlawful if it is unjustifiable under the applicable standard of review.
The second step in the analysis, therefore is to determine the appropriate standard of review. Generally, classifications that are based upon race are reviewed under the "strict scrutiny" standard. This standard requires that the classification in question serve a compelling state interest. In addition, the classification must be narrowly tailored to the accomplishment of that interest. Britton v. Rogers, 631 F.2d 572 (8th Cir. 1980).
The "strict scrutiny" standard having been identified as likely to be applicable, the third step in the analysis is to consider and determine whether the state has a compelling interest in creating that classification. The determination of whether the state has a compelling interest in a given classification is a factual determination that must be made on a case-by-case basis. Oburn v. Shapp, 521 F.2d 142 (3d Cir. 1975). The state will have the burden of proving that it has such an interest in maintaining the classification, and that the classification is necessary to the accomplishment of that interest. Cook v. Babbitt,819 F. Supp. 1 (D.D.C. 1993).
The foregoing are the general legal and factual considerations that will be undertaken in a determination of whether A.C.A. § 24-7-301(2)(A)(ii) is illegal, discriminatory, and/or unconstitutional in its requirement that one person other than a Caucasian be elected to the Board. The outcome of such a determination will depend entirely upon the evidence that is presented in support of (and against) the state's claimed interest in the classification created by the statute.
Question 2(b) — Is it illegal, discriminatory and/or unconstitutional forstate law to specify [in A.C.A. § 24-7-301(2)(A)(ii)] that such person[the non-Caucasian] "shall be elected by the Arkansas EducationAssociation"?
I have identified no state or federal law that would render the requirement of the election of the non-Caucasian member "by the Arkansas Education Association" inherently illegal, discriminatory, or unconstitutional. Of course, the requirement could, like any other valid law, be applied in an illegal, discriminatory, or unconstitutional manner. However, whether such an application of the requirement has occurred is purely a question of fact, which must be determined on a case-by-case basis.
Question 3 — Is it illegal, discriminatory and/or unconstitutional forstate law to specify [in A.C.A. § 24-7-301(2)(A)(iii)] that one classroomteacher must be "elected member trustee by classroom teacher members ofthe Arkansas Education Association"?
As with the requirement that is the subject of Question 2(b), I have identified no state or federal law that would render the requirement of the election of a classroom teacher member of the Board by the classroom teacher members of the Arkansas Education Association inherently illegal, discriminatory, or unconstitutional. Again, the requirement could be applied in an illegal, discriminatory, or unconstitutional manner. But whether such an application of the requirement has occurred, as noted previously, is purely a question of fact, which must be determined on a case-by-case basis.
Question 4 — Is it illegal, discriminatory and/or unconstitutional forstate law to specify [in A.C.A. § 24-7-301(3)(A)] that three retirants"shall be elected retirant trustees by the Arkansas Retired TeachersAssociation"?
As with the requirements that are the subjects of Questions 2(b) and 3, I have identified no state or federal law that would render the requirement of the election of three retirants by the Arkansas Retired Teachers Association inherently illegal, discriminatory, or unconstitutional. As with the other requirements, this requirement could be applied in an illegal, discriminatory, or unconstitutional manner. Whether such an application of the requirement has occurred is purely a question of fact, which must be determined on a case-by-case basis.
Question 5 — Must the Board vote to employ or not to employ professionaland clerical staff members?
It is my opinion that if the Board is presented with the question of whether to employ or not to employ professional and clerical staff members, state law does not require the Board to approve the proposal, nor does it require the Board to disapprove the proposal. Rather, state law gives the Board the discretion to make its own decision as to whether to approve or to disapprove the proposal.
A.C.A. § 24-7-303(g) states:
 The executive director shall have the authority to employ such other professional and clerical services, and to purchase such equipment and supplies, as are required for the proper operation of the system, subject to the approval of the board.
A.C.A. § 24-7-303(g).
The above-quoted language clearly places the final decision as to whether or not to employ professional and clerical staff members in the discretion of the Board, and does not require a particular outcome. It is, of course, assumed that the Board will act in good faith with the goal of facilitating "the proper operation of the system."
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh