**James J. TUTTLE, Appellant,**

v.

**HENRY J. KAISER COMPANY, a corporation, Appellee.**

**No. 90–5071.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1990.

Decided Dec. 14, 1990.

Tuttle had been treated differently than other employees with high absenteeism rates. *Tuttle v. Henry J. Kaiser Co.*, 863 F.2d 601 (8th Cir.1988) (*Tuttle* I). On remand, the District Court again found in favor of Kaiser. Tuttle challenges on appeal the District Court's factual findings. Because the factual findings are not clearly erroneous, we affirm.

We reiterate the factual background as set forth in *Tuttle* I, 863 F.2d at 601–602:

Tuttle (of three-quarter Indian blood) was employed April 11, 1983 as an electrician, inside journeyman wireman, on a large construction project. He was one of a crew of eight. On June 30, 1983 he was discharged by Berkeley Lake, one of Kaiser's superintendents, who had jurisdiction over Tuttle's crew, among others. The discharge slip, signed by Lake (since deceased) gave the reason "chronic absenteeism." Tuttle's foreman had been consulted before the discharge.

There were 57 work days from April 11, 1983 to June 30, inclusive. Tuttle had been absent five days, arrived late on four, and left early on two. Kaiser's Industrial Relations Manager for the project testified that each instance was counted as a day of absence, so that there were eleven, resulting in a percentage of nineteen; that he considered anything over ten percent excessive, but that the decision was left to the various superintendents, and their practice varied. A sample of ten discharges for absenteeism at about the same time (all Caucasians) showed a variation from 10.3% to 30.0%. An electrician who worked on a different crew was absent 22 days in 22 weeks, and was not discharged. Mr. Lake was considered one of the stricter superintendents.

Tuttle testified to explanations of most of the instances. Principally, he claimed he had notified his foreman in advance, or had telephoned a number Kaiser posted for that purpose. He and employees Rodgers and Johnson testified that ad-

Deborah J. Carpenter, Bismarck, N.D., for appellant.

Warren H. Albrecht, Jr., Bismarck, N.D., for appellee.

Before GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and MAGNUSON,* District Judge.

MAGNUSON, District Judge.

Appellant James Tuttle brought this action under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*) against Henry J. Kaiser Company. The District Court[1] conducted a bench trial of the matter and ruled that Tuttle failed to prove that his termination was racially discriminatory. Although the District Court found that Tuttle established a *prima facie* case, Kaiser expressed excessive absenteeism as a non-discriminatory reason. The District Court found that Tuttle did not prove this reason was a pretext. This Court then remanded the case, directing the District Court to explicitly address evidence that

---

* The HONORABLE PAUL A. MAGNUSON, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Karen K. Klein, Magistrate, District of North Dakota, conducted a bench trial pursuant to the consent of the parties.

vance notice or calling in would result in an excused absence. Management people testified to the contrary. The magistrate made a finding that this difference in understanding between employees and management may tend to show some unfairness in the handling of absenteeism, but that it was not race discrimination.

The Court in *Tuttle* I remanded the case because of the trial court's failure to specifically address the testimony of another Kaiser employee named DePaulis, who testified that his own absenteeism was worse than Tuttle's. DePaulis also testified that the entire crew was frequently absent. 863 F.2d at 602. *Tuttle* I also specifically noted that "Kaiser, which had the necessary records, did not show the absence records of the other crew members." *Id.* In the absence of specific findings regarding the pretext issue, appellate review could not be accomplished. *Id.*

On remand, Kaiser produced the absenteeism records for Tuttle's crew. Additionally, Gordon Lonning, a general foreman who had responsibility over three crews including Tuttle's, testified about the absenteeism policies at the project. Lonning testified that Tuttle's performance was poor and that, after reviewing the absenteeism records with Berkley Lake and Ron Braun, the three collectively decided to terminate Tuttle. Regarding other employees' absences, Lonning testified that many of the workers lived out of state and had to travel great distances to get home on weekends. These employees usually took "early outs" on Friday afternoons to get home for the weekend. Lonning testified that Kaiser treated such absences as excused absences. Another crew member named Mattson was a union representative who was absent frequently to participate in union negotiations. According to Lonning, these were also excused absences.

Based on this evidence Kaiser prepared a chart summarizing the absenteeism rates for Tuttle's crew which adjusts the absenteeism rates by not including absences treated as excused.[2] The summary shows adjusted absenteeism rates of fourteen per-

cent for Tuttle, two percent for Mattson, four percent for DePaulis, and nine percent for an employee named Hamlin.

Tuttle testified again at the second trial and admitted, on cross examination, that he was absent or late on the dates Kaiser regarded as unexcused. Tuttle stated no reason which would qualify as an excuse for those absences. In addition, Tuttle challenged the company's conclusion regarding two of his absences. Tuttle worked overtime on Saturday, June 11, and Saturday, June 18, 1983. The employee handbook states that overtime will not be allowed unless an employee has worked 40 hours in the preceding regular work week or has only excused absences in the preceding week. Kaiser management testified at the first trial, however, that the needs of the job dictated that the rule not be enforced.

DePaulis also testified at the second trial. He admitted that he did not keep track of Tuttle's absenteeism rate and that Tuttle might not have gotten to work on time every morning. He also admitted that he did not see any indication of race discrimination on the part of Ron Braun. Tuttle's other witness was a worker named Larry Johnson, who was on a different crew. Johnson testified that he was absent on 22 different occasions. Company records indicate that Johnson worked at the project a total of 110 days.

## I. Standard of Review

On appeal, factual findings may be reversed only if "clearly erroneous." *See* Fed.R.Civ.P. 52(a); *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "We may not reverse the district court's findings that [appellant was] not subject to impermissible discrimination unless our review of the record leaves us with the 'definite and firm conviction that a mistake has been made.'" *Griffin v. City of Omaha*, 785 F.2d 620, 625–26 (8th Cir.1986) (quoting *Anderson*, 105 S.Ct. at 1511). The appellate courts must not substitute their own *de novo* de-

---

**2.** Absences on April 12, 1983 were treated as excused for all employees due to a storm.

termination of the facts for the district court's. *Griffin,* 785 F.2d at 626 (citing *Anderson,* 105 S.Ct. at 1511–12). "The burden is on the objecting party to demonstrate clear error in factual findings, and the evidence must be construed in the light most favorable to the party who prevailed at trial." *Id.* This clearly erroneous standard applies whether the district court's findings are based on documentary evidence, credibility determinations, or some combination of the two. *Patterson v. Mason,* 774 F.2d 251, 256 (8th Cir.1985).

## II. Title VII

■ Title VII discrimination claims are evaluated under a three-step framework. First, the plaintiff must establish a prima facie case of discrimination. Once a prima facie case is established, the defendant must articulate a legitimate, non-discriminatory reason for the allegedly discriminatory action. If the defendant meets this burden, the plaintiff then must prove the articulated reason is mere pretext for a discriminatory motive. The plaintiff bears the ultimate burden of proving discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Appellate review need not proceed through the above three-step process. This Court reviews the "ultimate factual issue" of whether Kaiser discriminated against Tuttle on the basis of his race. *Griffin,* 785 F.2d at 625 (citing *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)).

■ We have reviewed the record and conclude that the District Court's finding is not clearly erroneous. Tuttle challenges the District Court's findings regarding the other workers' absenteeism[3] as related to the pretext issue, but the evidence can reasonably support these findings. Kaiser employees testified that Friday "early outs" and Mattson's union activities were excused absences. Although there is no direct evidence that each of Mattson's absences Kaiser regards as excused were due to union activity, such an inference is reasonable. The same can be said for the Friday "early outs." When this testimony is applied to the absenteeism records Kaiser produced, Tuttle's absenteeism is the worst in his crew and substantially above the ten percent "rule of thumb" discussed at the first trial.

Regarding Johnson, Kaiser's records show 110 total days of employment. With Johnson's testimony of 22 absences, assuming none were excused, his rate is 11%. Kaiser offered evidence that he was on a different crew with more relaxed standards. This explanation is sufficient to support a finding that Johnson was not situated similarly to Tuttle.

Finally, the evidence of discriminatory work assignments noted in *Tuttle* I, 863 F.2d at 602, was explained at the first trial. Ron Braun, his foreman, testified that Tuttle was on a three man crew but had less to do than the other two and needed additional work to stay busy. For this reason, he was given several assignments to complete by himself when he was not busy.

Viewing the record in its entirety, the District Court was faced with conflicting evidence regarding Tuttle's discharge. Tuttle essentially contested Kaiser's assertion that certain absences were not excused, specifically noting his own understanding of the rules and the handbook provisions. Kaiser provided evidence to explain each of the concerns Tuttle raised. The District Court noted that the evidence showed potential unfairness in Kaiser's employment practices but not discrimination. A reasonable fact finder could conclude

---

3. Despite appellant's categorization of three issues in his brief, the appeal raises only one issue: whether the District Court's findings are supported by the evidence. For this reason, Tuttle's citation of *Womack v. Munson,* 619 F.2d 1292 (8th Cir.1980) is not persuasive. In *Womack,* the judgment was reversed because the evidence "overwhelmingly established" that the reason for discharge was pretextual. 619 F.2d at 1298. Such decisions hinge on the particular facts of each case and this case is factually distinguishable. Lonning's testimony is not an after-the-fact attempt at justification; rather, it is a specific rebuttal of Tuttle's pretext argument. This evidence was precisely what the remand order called for.

that Kaiser was both unfair and discriminatory on this record; however, a reasonable fact finder could also conclude that Tuttle was fired solely for an excessive absenteeism rate which materially exceeded the rates of others in his crew.

In sum, there is sufficient evidence to support the district court's findings. Construing the evidence in the light most favorable to Kaiser, Tuttle did not meet his burden of proving the ultimate question of discrimination. We do not find the District Court's findings clearly erroneous.

We affirm the judgment of the district court.