**Isaiah BROWN, Appellant,**

v.

**POLK COUNTY, IOWA, A Municipal Corporation; Ray Sears, Former County Administrator for Polk County; and Polk County Board of Supervisors, Appellees.**

No. 93–3313.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1995.

Decided July 31, 1995.

Order Denying Suggestion for Rehearing En Banc Sept. 21, 1995.

---

Nathan W. Kellum, Tupelo, MS, argued for appellant (Robert A. Wright, Jr. and Stephen M. Crampton, on brief).

Mark Godwin, Des Moines, IA, argued for appellees.

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In mid–1986, Isaiah Brown, a black man who identifies himself as a born-again Christian, became the director of the information services (data processing) department for Polk County, Iowa. He reported directly to the county administrator and supervised approximately 50 employees.

In mid–1990, an internal investigation into religious activities conducted on government time by employees in Mr. Brown's department revealed that Mr. Brown had directed a secretary to type Bible study notes for him, that several employees had said prayers in Mr. Brown's office before the beginning of some workdays, that several employees had said prayers in Mr. Brown's office in department meetings held during the day, and that in addressing one meeting of employees, Mr. Brown had affirmed his Christianity and had referred to Bible passages related to slothfulness and "work ethics." Subsequently, the county administrator reprimanded Mr. Brown in writing for a "lack of judgment pertaining to his personal participation in and/or his knowledge of employees participating in activities that could be construed as the direct support of or the promotion of a religious organization or religious activities utilizing the resources of Polk County Government." The reprimand directed Mr. Brown "immediately [to] cease any activities that could be considered to be religious proselytizing, witnessing, or counseling and . . . further [to] cease to utilize County resources that in any way could be perceived as to be supporting a religious activity or religious

organization." The reprimand also directed Mr. Brown to "insure a work environment that is free of the types of activities ... described." Subsequently, on a separate occasion, the county administrator directed Mr. Brown to remove from his office all items with a religious connotation, including a Bible in his desk.

In late 1990, the county administrator again reprimanded Mr. Brown in writing, on that occasion for a "lack of judgment" related to financial constraints in the county's budget. Two weeks later, after an internal investigation into personal use of county computers by employees in Mr. Brown's department, the county administrator asked Mr. Brown to resign; when he refused, the county administrator fired him.

In late 1991, Mr. Brown sued the county, its board of supervisors, and the county administrator. Mr. Brown alleged, under 42 U.S.C. § 1983, that the first reprimand and the order to remove from his office all items with a religious connotation violated constitutional guarantees of free exercise of religion, free speech, and equal protection. He also alleged, under 42 U.S.C. § 2000e–2(a)(1) (Title VII of the Civil Rights Act of 1964) and Iowa Code Ann. § 216.6(1)(a), that he was fired because of his race and his religion.

Because the requirements of the state statute in this case are the same as those of Title VII, our subsequent discussion will refer to Title VII only, for the sake of simplicity. Our conclusions apply, however, to both the federal and the state claims. We note in addition that although some language in Mr. Brown's complaint suggests that his discharge violated the first and fourteenth amendments, he requested back pay and reinstatement to his job solely with respect to his statutory discrimination claims. The relief he sought for his constitutional claims, in contrast, was a declaratory judgment and compensatory damages. We note as well that Mr. Brown offered no actual argument to support the proposition that his discharge violated constitutional guarantees, as opposed to statutory prohibitions only, in his closing argument in the district court, his oral arguments in this court, or his appellate briefs.

After a five-day bench trial, the district court found for the defendants in all respects.

*See Brown v. Polk County, Iowa,* 832 F.Supp. 1305 (S.D.Iowa 1993); *see also Brown v. Polk County, Iowa,* 811 F.Supp. 432 (S.D.Iowa 1992). On appeal, a divided panel of this court affirmed the judgment of the district court. *See Brown v. Polk County, Iowa,* 37 F.3d 404 (8th Cir.1994). On rehearing *en banc,* however, we affirm in part and reverse in part.

## I.

■ Federal and state laws forbid an employer to fire an employee because of that employee's race. *See* 42 U.S.C. § 2000e–2(a)(1) and Iowa Code Ann. § 216.6(1)(a). The district court made the factual finding that racial animus played no part in the decision to fire Mr. Brown. *See Brown v. Polk County, Iowa,* 832 F.Supp. 1305, 1312 (S.D.Iowa 1993).

We have read the transcript of the entire trial and have examined all of the exhibits submitted at trial. We have also reviewed all of the materials in the district court file. The district court's conclusion that Mr. Brown's race played no part in his discharge is not clearly erroneous. *See, e.g., Tuttle v. Henry J. Kaiser Co.,* 921 F.2d 183, 185–87 (8th Cir.1990). We therefore affirm the district court judgment with respect to the statutory race discrimination claims and turn to the statutory religious discrimination claims.

## II.

Federal and state laws also forbid an employer to fire an employee because of that employee's religion. *See* 42 U.S.C. § 2000e–2(a)(1) and Iowa Code Ann. § 216.6(1)(a). "Religion" includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate to an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business." *See* 42 U.S.C. § 2000e(j); *see also King v. Iowa Civil Rights Commission,* 334 N.W.2d 598, 602, 602 n. 1, 604 (Iowa 1983).

The district court made the factual finding that religious animus played no part in the decision to fire Mr. Brown. *See Brown v. Polk County, Iowa,* 832 F.Supp. 1305, 1314 (S.D.Iowa 1993). The district court found,

instead, that the reason for Mr. Brown's discharge was inadequate performance, *see id.*, specifically, the inability to supervise and administer his department, *see id.* at 1312. Because we find that religious activities played a part in the decision to fire Mr. Brown, and that the proof was inadequate to show that Mr. Brown would have been fired if those activities had not been considered, we reverse the district court judgment with respect to the statutory religious discrimination claims.

In most of the cases alleging religious discrimination under Title VII, the employer is a private entity rather than a government, and the first amendment to the Constitution is therefore not applicable to the employment relationship. *See, e.g., Toledo v. Nobel–Sysco, Inc.*, 892 F.2d 1481, 1492 n. 5 (10th Cir. 1989), *cert. denied*, 495 U.S. 948, 110 S.Ct. 2208, 109 L.Ed.2d 535 (1990). In cases such as this one, however, where a government is the employer, we must consider both the first amendment and Title VII in determining the legitimacy of the county administrator's action. The first amendment is, of course, applicable to state-created government units by virtue of the fourteenth amendment. *See, e.g., Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972) (*per curiam* ).

■ With specific reference to the free exercise clause, we hold that in the governmental employment context, the first amendment protects at least as much religious activity as Title VII does. *See, e.g., United States v. Board of Education*, 911 F.2d 882, 890 (3d Cir.1990) ("at the very least, undue hardship is a lower standard than compelling state interest"). Another way of framing that holding is to say that any religious activities of employees that can be accommodated without undue hardship to the governmental employer, *see* 42 U.S.C. § 2000e(j), are also protected by the first amendment. In other words, if a governmental employer has violated Title VII, it has also violated the guarantees of the first amendment. We turn, then, to a more detailed examination of the requirements of Title VII.

### III.

The county administrator testified that he fired Mr. Brown "because of [a] culmination of incidents" that led him to conclude that Mr. Brown "had lost control of his department and was no longer in a position to manage effectively." The county administrator also testified, moreover, that the reprimand for "religious activities" was "a factor" in the decision to fire Mr. Brown. The labor relations manager for the county testified as well that, in asking for Mr. Brown's resignation and then firing him, the county administrator told Mr. Brown that the first reprimand was among the "concerns" prompting his discharge. Finally, Mr. Brown himself testified that the reasons given for his discharge by the county administrator were "the problems that [had] centered around [Mr. Brown's] department for [the] last two years, primarily religion." Unfortunately, none of the witnesses specified with any more particularity the exact actions to which the county administrator was alluding. We must, therefore, consider what activities were covered by the first reprimand and which, if any, of those activities were protected by Title VII.

■ Preliminarily, we reject the defendants' argument that because Mr. Brown never explicitly asked for accommodation for his religious activities, he may not claim the protections of Title VII. An employer need have "only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1439 (9th Cir.1993). Because the first reprimand related directly to religious activities by Mr. Brown, we agree with the district court that the defendants were well aware of the potential for conflict between their expectations and Mr. Brown's religious activities. *See Brown v. Polk County, Iowa*, 832 F.Supp. 1305, 1313 n. 17 (S.D.Iowa 1993).

■ It is undisputed that the defendants made no attempt to accommodate any of Mr. Brown's religious activities. In those circumstances, the defendants may prevail only if they can show that allowing those activities "could not be accomplished without undue hardship." *United States v. Board of Education*, 911 F.2d 882, 887 (3d Cir.1990). *See*

*also Toledo v. Nobel–Sysco, Inc.,* 892 F.2d 1481, 1490 (10th Cir.1989), *cert. denied,* 495 U.S. 948, 110 S.Ct. 2208, 109 L.Ed.2d 535 (1990); *Equal Employment Opportunity Commission v. Hacienda Hotel,* 881 F.2d 1504, 1512 (9th Cir.1989); and *Smith v. Pyro Mining Co.,* 827 F.2d 1081, 1086 (6th Cir. 1987), *cert. denied,* 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988). Undue hardship is "not defined within the language of Title VII. Thus, the precise reach of the employer's obligation to its employee is unclear under the statute and must be determined on a case-by-case basis." *Beadle v. Hillsborough County Sheriff's Department,* 29 F.3d 589, 592 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2001, 131 L.Ed.2d 1002 (1995). *See also Equal Employment Opportunity Commission v. Hacienda Hotel,* 881 F.2d at 1512 n. 5, and *United States v. City of Albuquerque,* 545 F.2d 110, 114 (10th Cir.1976), *cert. denied,* 433 U.S. 909, 97 S.Ct. 2974, 53 L.Ed.2d 1092 (1977).

■ "To require [an employer] to bear more than a *de minimis* cost ... is an undue hardship." *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 84, 97 S.Ct. 2264, 2277, 53 L.Ed.2d 113 (1977). "The cost of hiring an additional worker or the loss of production that results from not replacing a worker who is unavailable due to a religious conflict can amount to undue hardship." *Lee v. ABF Freight System, Inc.,* 22 F.3d 1019, 1023 (10th Cir.1994); *see also Brener v. Diagnostic Center Hospital,* 671 F.2d 141, 144 (5th Cir.1982). *De minimis* cost, moreover, "entails not only monetary concerns, but also the employer's burden in conducting its business." *Beadle v. City of Tampa,* 42 F.3d 633, 636 (11th Cir.1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2600, 132 L.Ed.2d 846 (U.S. 1995); *see also United States v. Board of Education,* 911 F.2d at 887.

■ Any hardship asserted, furthermore, must be "real" rather than "speculative," *Cook v. Chrysler Corp.,* 981 F.2d 336, 339 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2963, 125 L.Ed.2d 663 (1993), "merely conceivable," or "hypothetical," *Tooley v. Martin–Marietta Corp.,* 648 F.2d 1239, 1243 (9th Cir.1981), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981).

*See also Toledo,* 892 F.2d at 1492; *Smith,* 827 F.2d at 1086; and *Brown v. General Motors Corp.,* 601 F.2d 956, 961 (8th Cir. 1979). An employer "stands on weak ground when advancing hypothetical hardships in a factual vacuum." *Brown,* 601 F.2d at 960. "Undue hardship cannot be proved by assumptions nor by opinions based on hypothetical facts." *Anderson v. General Dynamics Convair Aerospace Division,* 589 F.2d 397, 402 (9th Cir.1978), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979); *see also Draper v. United States Pipe and Foundry Co.,* 527 F.2d 515, 520 (6th Cir.1975). "Undue hardship requires more than proof of some fellow-worker's grumbling.... An employer ... would have to show ... actual imposition on co-workers or disruption of the work routine." *Burns v. Southern Pacific Transportation Co.,* 589 F.2d 403, 407 (9th Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979); *see also Draper,* 527 F.2d at 520–21.

The first reprimand to Mr. Brown was precipitated by the internal investigation into religious activities conducted in mid–1990. The investigation revealed four actions attributed to him—directing a secretary to type his Bible study notes, allowing prayers in his office before the start of the workday, allowing prayers in his office during department meetings, and affirming his Christianity and referring to Bible passages about slothfulness and "work ethics" during one department meeting. We consider each of those activities in light of the commands of Title VII.

■ The defendants argue that allowing Mr. Brown to direct a county employee to type his Bible study notes would amount to an undue hardship on the conduct of county business, since the work that that employee would otherwise be doing would have to be postponed, done by another employee, or not done at all. We agree that such an activity creates more than a *de minimis* cost to the defendants. *See, e.g., Lee,* 22 F.3d at 1023, and *Brener,* 671 F.2d at 144. We conclude, therefore, that the defendants may not be held liable under Title VII for their actions in relation to that activity.

■ Nor, by the way, do we believe that the defendants' actions with respect to that

activity violate the free exercise clause. That is because we do not consider precluding Mr. Brown from directing a county employee to type his Bible study notes to be a "substantial[ ] burden" upon his religious practices. *Employment Division v. Smith,* 494 U.S. 872, 883, 110 S.Ct. 1595, 1602–03, 108 L.Ed.2d 876 (1990). *See also Wisconsin v. Yoder,* 406 U.S. 205, 220, 92 S.Ct. 1526, 1535–36, 32 L.Ed.2d 15 (1972), and *Sherbert v. Verner,* 374 U.S. 398, 406, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963). We would be surprised if directing a county employee to type Bible study notes is "conduct mandated by religious belief," *Thomas v. Review Board,* 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981), and, indeed, Mr. Brown does not so contend. We conclude, therefore, that Mr. Brown's directing a county employee to type his Bible study notes was not an activity protected at all under the law in this case and, accordingly, that the defendants may not be held liable for their actions with respect to that activity.

■ With respect to Mr. Brown's allowing prayers in his office before the start of the workday, nothing in Title VII requires that an employer open its premises for use before the start of the workday. Nor, incidentally, would the first amendment so require in this case, since no proof was offered that Mr. Brown's office was a public forum or a limited public forum or that the defendants allowed employees to use their offices for personal purposes before the start of the workday (indeed, the defendants' position was that once an employee arrived at the office, the workday began, regardless of the actual time, and the defendants' policy manual directed that no personal use of county resources was permitted). *See, e.g., United States v. Kokinda,* 497 U.S. 720, 725–27, 729–30, 110 S.Ct. 3115, 3118–20, 3121–22, 111 L.Ed.2d 571 (1990) (plurality opinion). *See also United States Postal Service v. Council of Greenburgh Civic Associations,* 453 U.S. 114, 129, 101 S.Ct. 2676, 2685, 69 L.Ed.2d 517 (1981), and *Widmar v. Vincent,* 454 U.S. 263, 268 n. 5, 277, 102 S.Ct. 269, 273–74 n. 5, 278, 70 L.Ed.2d 440 (1981). We conclude, therefore, that Mr. Brown's allowing prayers in his office before the start of the workday was not an activity protected at all under the law in this case and, accordingly, that the defen-

dants may not be held liable for their actions in relation to that activity.

■ Mr. Brown also allowed prayers in his office during several department meetings and affirmed his Christianity and referred to Bible passages related to slothfulness and "work ethics" during one department meeting. All of the testimony was that the prayers were entirely voluntary and "spontaneous," "did not occur regularly," and dealt with "matters related to Polk County business," and that Mr. Brown's affirmation of Christianity and reference to Bible passages on slothfulness and "work ethics" occurred during only one meeting. Given their context, all of those actions may well have been impolitic on Mr. Brown's part, but we think that they were inconsequential as a legal matter, especially since they were apparently spontaneous and infrequent.

The defendants argue that allowing spontaneous prayers, occasional affirmations of Christianity, and isolated references to Bible passages would amount to an undue hardship on the conduct of county business by virtue of eventual polarization between born-again Christian employees and other employees, and a concomitant perception that Mr. Brown "might favor those with similar beliefs" in making personnel decisions. In support, the defendants point to the county administrator's testimony about "certain contacts with the personnel department by employees of [Mr. Brown's] department" related to "concerns" about the possible effect of Mr. Brown's religious beliefs on his personnel decisions. The county administrator also testified that when "a number of articles" appeared in the local newspaper in mid–1990 about the investigation into religious activities in Mr. Brown's department, "various people in Polk County Government" made those articles "a point of conversation," from which the county administrator "discern[ed] ... that the atmosphere of religion that had pervaded the information services department hurt the morale of that department." He conceded, however, that he had received no complaints himself from employees "directly" and had not himself "personally ... witness[ed] uncomfortableness between those who were Christians and [those who were] non-Christians." A supervisor in Mr. Brown's department testified only that she

had "heard" that "some people ... were concerned" about the possible effect of Mr. Brown's religious beliefs on his personnel decisions.

No evidence whatsoever was presented from employees in Mr. Brown's department, however, or from anyone else, for that matter, to show that Mr. Brown's personnel decisions actually were affected by his religious beliefs or that employee concerns in that respect were either reasonable or legitimate. The investigation report, furthermore, stated only that Mr. Brown's religious activities had the *"potential effect"* (emphasis supplied) of "generating an impression of preference for those who share similar beliefs" and of "polarizing staff." The county administrator testified, moreover, that he never believed that Mr. Brown showed any "favoritism" or "actually did discriminate against anybody on the basis of their religion"; a former employee from Mr. Brown's department testified to the same effect. Finally, three other employees testified that although there was "a division in the office between Christians and those who were not Christians," "it really had no effect on the work," and that any morale problems in Mr. Brown's department stemmed from "disagreements about how [the work] should be done" and whether the department should be reorganized rather than about "religious issues."

In our view, the defendants' examples of the burden that they would have to bear by tolerating trifling instances such as those complained of are insufficiently "real," *Cook,* 981 F.2d at 339, and too "hypothetical," *Tooley,* 648 F.2d at 1243, to satisfy the standard required to show undue hardship. The defendants showed no "actual imposition on co-workers or disruption of the work routine," *Burns,* 589 F.2d at 407, generated by occasional spontaneous prayers and isolated references to Christian belief. On this record, we hold that the defendants failed to prove that accommodating such instances as they objected to would lead to undue hardship. *See, e.g., Cook,* 981 F.2d at 339, and *Brown,* 601 F.2d at 961. The defendants may be held liable, therefore, for firing Mr. Brown on account of those activities unless the defendants can prove that they would have fired him regardless of those activities. *See, e.g., Price Waterhouse v. Hopkins,* 490 U.S.

228, 242, 244–46, 252–53, 258, 109 S.Ct. 1775, 1786, 1787–88, 1791–92, 1794–95, 104 L.Ed.2d 268 (1989) (plurality opinion).

The district court held that Mr. Brown had offered no direct evidence that he was fired on account of his religious activities. *See Brown,* 832 F.Supp. at 1313, 1313 n. 16. We do not understand that conclusion, since, as we have already noted, the county administrator himself testified that the first reprimand, which was based on religious activities, was "a factor" in his decision to fire Mr. Brown. *See, e.g., Sargent v. Paul,* 16 F.3d 946, 948 (8th Cir.1994). We believe that Mr. Brown presented enough evidence to require the application of a "mixed-motives" analysis instead. *Price Waterhouse,* 490 U.S. at 252, 109 S.Ct. at 1791–92 (plurality opinion).

In these circumstances, we could remand to the district court for findings on the question of whether the defendants proved that they would have fired Mr. Brown even if they had not considered his religious activities. *See, e.g., Stacks v. Southwestern Bell Yellow Pages,* 996 F.2d 200, 202–03 (8th Cir.1993) *(per curiam ).* In this case, however, we hold that it would be futile to do so, since no reasonable person could conclude from the evidence presented that the defendants proved that they would have fired Mr. Brown anyway. Indeed, when asked specifically at trial if Mr. Brown would have been fired absent the first reprimand, the county administrator responded, "I wouldn't want to speculate on that.... I just don't know." The defendants point to no evidence that would allow us to conclude that they met their burden under a mixed-motives test, and our independent examination of the record has revealed none. *See, e.g., Price Waterhouse,* 490 U.S. at 242, 244–46, 252–53, 258, 109 S.Ct. at 1786, 1787–88, 1791–92, 1794–95 (plurality opinion). We therefore reverse the judgment on the statutory religious discrimination claims and remand the case to the district court for consideration of the appropriate relief on those claims. *See, e.g., Stacks v. Southwestern Bell Yellow Pages,* 27 F.3d 1316, 1327 (8th Cir.1994).

### IV.

We last consider constitutional claims that Mr. Brown did not link to his

termination. We reverse the district court with respect to those claims and remand the case for consideration of the appropriate relief.

We are mindful (as the dissenting judges are) that our cases, and first amendment jurisprudence in general, require that plaintiffs in cases like this must show that the governmental action complained of substantially burdened their religious activities. (We take this to mean that Mr. Brown must show that the burdens placed on him were not inconsiderable.) We have already said as much in a previous section of this opinion. But Mr. Brown has carried that burden. From Mr. Brown's testimony, there can be no doubt that his religious beliefs are extremely important to him and play a central role in his life. He testified that in 1986 or early 1987 he underwent a personal spiritual revival that was "a life-changing experience" for him. He stated, in addition, that prayer was "something that's part of [his] being," that prayer "leads [him] and ... guides [him]," and that he uses prayer in his life "on a daily basis." He believes, according to his testimony, that prayer "changes things" and, furthermore, that his God expects him to pray "for governments, our nation, our schools, our children, all the pandemic problems inherent in our society." There was no challenge to this testimony then or now, and all of the evidence points to a conclusion that Mr. Brown found the defendants' prohibitions oppressive and vexatious.

In these circumstances, the district court's observation that Mr. Brown did not show "that the removal of religious items from his office inhibited his ability to freely exercise his religion," *Brown v. Polk County, Iowa*, 832 F.Supp. 1305, 1316 (S.D.Iowa 1993), either proceeds from a misunderstanding of what a substantial burden is, or is a clearly erroneous finding of fact. Our observation above that some of Mr. Brown's religious activities were inconsequential was, of course, meant to indicate that they did not produce even an insignificant external effect in the workplace, not that they were not significant to him.

Mr. Brown first asserts that his first amendment right to the free exercise of his religion was violated when the county administrator ordered him to "cease any activities that could be considered to be religious proselytizing, witnessing, or counseling" while he was on the job. Although the free exercise of religion is certainly a fundamental constitutional right, *see, e.g., Johnson v. Robison*, 415 U.S. 361, 375 n. 14, 94 S.Ct. 1160, 1169 n. 14, 39 L.Ed.2d 389 (1974), we believe that the Supreme Court might well adopt, for free exercise cases that arise in the context of public employment, an analysis like the one enunciated in *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). That case dealt with free speech rather than the free exercise of religion, but because the analogy is such a close one, and because we see no essential relevant differences between those rights, we shall endeavor to apply the principles of *Pickering* to the case at hand.

*Pickering* recognizes a public employee's right to speak on matters that lie at the core of the first amendment, that is, matters of public concern, so long as "the effective functioning of the public employer's enterprise" is not interfered with. *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987). The kind of speech that Polk County prohibited in this case lies right at the core of the free exercise clause. We have, moreover, already indicated at some length our belief that the record reveals no diminution whatever in the effectiveness of governmental functions fairly attributable to anything that Mr. Brown did that is forbidden by the order. The order therefore fails to find any justification under well-settled principles governing the constitutional rights of public employees.

We may concede for the sake of argument that Polk County has a legal right to ensure that its workplace is free from religious activity that harasses or intimidates. But any interference with religious activity that the exercise of that right entails must be reasonably related to the exercise of that right and must be narrowly tailored to its achievement. *See, e.g., Thomas v. Review Board*, 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981). Here, there was not the least attempt to confine the prohibition to harassing or intimidating speech. Instead, Polk County baldly directed Mr. Brown to "cease any activities that *could be considered* to be reli-

gious proselytizing, witnessing, or counseling" (emphasis supplied). That order exhibited a hostility to religion that our Constitution simply prohibits. It would seem to require no argument that to forbid speech "that could be considered" religious is not narrowly tailored to the aim of prohibiting harassment, although it is certainly capable of doing that. If Mr. Brown asked someone to attend his church, for instance, we suppose that that "could be considered" proselytizing, but its prohibition runs afoul of the free exercise clause. Similarly, a statement to the effect that one's religion was important in one's life "could be considered" witnessing, yet for the government to forbid it would be unconstitutional.

The defendants would have us hold that their "interest" in avoiding a claim against them that they have violated the establishment clause allows them to prohibit religious expression altogether in their workplaces. Such a position is too extravagant to maintain, for it gives a dominance to the establishment clause that it does not have and that would allow it to trump the free exercise clause. One might just as well justify erecting a cross and a creche on county property at Christmas as a means of avoiding a claim that employees had been denied their free exercise rights. The clauses cannot, in the nature of things, make conflicting demands on a government, and government is charged with making sure that its activities are confined to the ample and well-defined space that separates them.

Mr. Brown also complains about the directive to remove from his office all items with a religious connotation, including a Bible that was in his desk. It is here, perhaps, that the zealotry of the county administrator is most clearly revealed. Mr. Brown had to remove a plaque containing the serenity prayer ("God, grant me the serenity to accept the things I cannot change, the courage to change the things I can, and the wisdom to know the difference"), another that said, "God be in my life and in my commitment," and a third containing the Lord's Prayer. Most intrusive of all was the order to take down a poster that proclaimed some non-religious inspirational commonplaces that were deemed inappropriate because their au-

thor, although he occupied no religious office, had "Cardinal" in his name. Mr. Brown testified that he was told that these items had to go because they might be considered "offensive to employees."

Our observations above with reference to the application of the principles of *Pickering* apply with equal force to this second portion of Mr. Brown's claim. There was no showing of disruption of work or any interference with the efficient performance of governmental functions sufficient to allow for this extraordinary action on the part of Polk County. We emphasize, moreover, that even if employees found Mr. Brown's displays "offensive," Polk County could not legally remove them if their "offensiveness" was based on the content of their message. In that case, the county would be taking sides in a religious dispute, which, of course, it cannot do under either the establishment clause or the equal protection clause. If the "offensive" character of the display ran to a well-grounded apprehension among employees of discriminatory treatment by Mr. Brown, then this case might be entirely different. But the evidence will not support such a finding here. We emphasize, too, that fear alone, even fear of discrimination or other illegal activity, is not enough to justify such a mobilization of governmental force against Mr. Brown. The fear must be substantial and, above all, objectively reasonable. A phobia of religion, for instance, no matter how real subjectively, will not do. As Justice Brandeis has said, rather starkly, "Men feared witches and burnt women." *Whitney v. California*, 274 U.S. 357, 376, 47 S.Ct. 641, 648, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring).

### V.

For the reasons indicated, we affirm the judgment of the district court in part, we reverse it in part, and we remand for further proceedings consistent with this opinion.

FAGG, Circuit Judge, dissenting, joined by LOKEN, HANSEN, and MURPHY, Circuit Judges.

The Court ignores a major defect in proof on Brown's free exercise claim and takes over the district court's fact-finding function

on Brown's statutory claim of religious discrimination. I thus respectfully dissent.

It is well-established that to prove a free exercise violation, a religious adherent must initially show the challenged governmental action burdened the adherent's religious practices. *Rushton v. Nebraska Pub. Power Dist.*, 844 F.2d 562, 564 (8th Cir.1988); *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1392–93 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 510, 130 L.Ed.2d 417 (1994). The burden must be substantial rather than a mere inconvenience. *Vernon*, 27 F.3d at 1392–93. To rise to the level of a substantial burden, the governmental action must either pressure the religious adherent to commit an act the religion forbids, or prevent the adherent from engaging in conduct the religion requires. *Id.* at 1393 (applying substantial burden requirement to decide Free Exercise Clause not violated by investigation of whether police chief's religious views impermissibly affected his work performance).

Although the Court recognizes the substantial burden requirement, *ante* at 656, the Court ignores Brown's failure to show the County's actions rose to the level of a substantial burden on his religious practices. The record lacks any evidence that Brown's born-again Christianity required him to display religious items in his office or to engage in the religious activities restricted by the reprimand. Indeed, the district court found Brown did not prove the removal of the items from his office inhibited his ability to exercise his religion freely. 832 F.Supp. at 1316. "Brown does not dispute the [district] court's factual findings" with respect to his First Amendment claims. Brief for Appellant at 5. The district court's finding is not clearly erroneous anyway. As for the religious activity restrictions, the Court recognizes the prayers at departmental meetings were spontaneous, infrequent, and inconsequential. *Ante* at 656. The evidence about the change in Brown's religious practices after the reprimand shows the restrictions merely inconvenienced Brown. Rather than engaging in group prayers during work, Brown simply went across the street to the library at lunchtime to read his Bible and pray with others. The reprimand did not restrict Brown's private prayers. Brown has not shown any substantial, concrete harm to his religious practice resulted from Polk County's actions. The Court misplaces reliance on evidence that Brown's "religious beliefs are extremely important to him and play a central role in his life." *Ante* at 658. The fact that Brown sincerely held his religious beliefs does not mean the County's actions substantially burdened Brown's exercise of those beliefs. Because Brown failed to show the County's actions substantially burdened his religious practices, the Court should not even reach the *Pickering* analysis on Brown's free exercise claim. *See Vernon*, 27 F.3d at 1395. As explained in the vacated panel opinion, however, I would hold the balance of interests tips in the County's favor in this case, primarily given Brown's status as a supervisor of fifty employees. *See* 37 F.3d at 408–10.

Assuming the mixed-motives analysis applies to Brown's statutory religious discrimination claim, I would remand for the district court to decide whether the County would have fired Brown absent his religious activities. In making the finding on appeal, the Court disregards the timing of Brown's discharge and the evidence showing Brown's consistently poor work performance. In my view, the district court could reasonably find the County would have discharged Brown regardless of his religious activities.

After the County administrator, Ray Sears, chose Brown to become director of the County's information services department (ISD) in mid–1986, the ISD experienced many problems. In Brown's 1988, 1989, and 1990 performance evaluations, Sears expressed concern with Brown's ability to communicate, delegate authority, and maintain predetermined schedules. The ISD experienced significant delays in meeting project deadlines in late 1989, prompting an unprecedented departmental evaluation by an outside consulting firm and a departmental restructuring. In July 1990 Brown received the single reprimand for religious activity at work and Sears removed the items from Brown's office. No religious activities were reported after the reprimand. Four months later, in November 1990, Sears reprimanded Brown for exercising poor judgment about budgetary matters. The same month, Sears ordered an investigation into reports that ISD computers were still being used for per-

sonal matters even though Brown had tried to eliminate the problem. The investigation revealed ISD computers contained pornography and personal budgets. Sears asked for Brown's resignation after receiving the results of the computer investigation on December 3, 1990.

The Court places too much stock in Sears's testimony that he did not know whether Brown would have been fired absent the reprimand for religious activities. *Ante* at 657–58. Sears's statement is equivocal and must be considered in light of the entire record. Given the overwhelming evidence of inadequate performance in relation to the single reprimand for religious activity, and the fact that Sears did not terminate Brown until pornography was found on the ISD's computers five months after the religious reprimand, I believe the district court could reasonably find the County would have fired Brown absent his religious activities.

I would remand Brown's statutory religious discrimination claim, but otherwise affirm the district court.

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges.

### Order Denying Suggestion for Rehearing En Banc.

#### Aug. 21, 1995

MORRIS SHEPPARD ARNOLD, Circuit Judge.

The petition for rehearing *en banc* asserts that "Polk County was never allowed to present evidence concerning whether it would have terminated Mr. Brown's employment without considering the two incidents this court invalidated." To the contrary, the district court held a five-day bench trial at which Polk County had every opportunity to ask whatever questions it wanted and to develop the record in any way it desired. Now, more than two years after the original trial, Polk County seeks in effect to reopen the evidence in order to repair an omission on its part. We see no reason to grant that request.

The petition for rehearing *en banc* is therefore denied.

FAGG, Circuit Judge, dissenting, joined by LOKEN, HANSEN, and MURPHY, Circuit Judges.

I dissent from the order denying rehearing *en banc*.

I would grant Polk County's suggestion for rehearing *en banc*. First, Brown's Title VII claim should be remanded to the district court for development of the record and factual findings under the *Price Waterhouse* mixed-motives test, which the district court did not apply at trial. The County should be given an opportunity to present evidence about whether it would have fired Brown absent consideration of the group prayers and Brown's religious statements during departmental meetings. Second, Brown failed to prove the County's actions substantially burdened his religious practices, an essential element of his free exercise claim. Last, the court's opinion raises more vexing questions than it answers about a supervisor's practice of religion on a public employer's time. Indeed, I believe the court misconstrues First Amendment law in stating the Establishment Clause and the Free Exercise Clause are separated by an "ample and well-defined space" and "cannot ... make conflicting demands on a government." *Brown v. Polk County, Iowa,* 61 F.3d 650, 659 (8th Cir.1995) *(en banc).*