# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3322/03-1422

_____

Steve Warnock,      *
     *
        Appellant,      *
     *
     v.      *    Appeals from the United States
     *    District Court for the Eastern
Charles Archer, Individually and as    *    District of Arkansas.
Superintendent; Charles Eads,    *
Individually and as Principal; Gene    *
Baldwin, Individually and as School    *
Board President; David Smith,    *
Individually and as member of the    *
Board of Directors of the Devalls Bluff, *
Arkansas Public School District;    *
L.C. Holloway, Individually and as    *
member of the Board of Directors of the *
Devalls Bluff, Arkansas Public School    *
District; Verna Gaddy, Individually and *
as member of the Board of Directors of    *
the Devalls Bluff, Arkansas Public    *
School District; Melvin Hula,    *
Individually and as member of the    *
Board of Directors of the Devalls Bluff, *
Arkansas Public School District; Vera    *
Doepel, Individually and as member    *
of the Board of Directors of the    *
Devalls Bluff, Arkansas Public School    *
District; Emma Gray, Individually and    *
as member of the Board of Directors of    *
the Devalls Bluff, Arkansas Public    *
School District; Devalls Bluff Public    *

School District,                        *
                                     *

          Appellees.             *

-------------------------------------------  *

                                       *

Americans United for Separation of   *
Church and State,                   *

                                       *

          Amicus on Behalf      *
          of Appellant.          *

_____

Submitted:  May 10, 2004
Filed:  August 24, 2004

_____

Before MORRIS SHEPPARD ARNOLD, McMILLIAN, and MELLOY, Circuit
      Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Steve Warnock brought this action under 42 U.S.C. § 1983, challenging various practices of the Devalls Bluff School District on establishment clause grounds. Mr. Warnock, though partially successful below, appeals on the ground that the relief granted to him was insufficient. The various defendants cross-appeal, arguing that the district court erred in finding that the first amendment had been violated. We uphold the district court on the merits but conclude that its injunction was insufficiently broad to cure the constitutional violation involved in this case.

I.

Mr. Warnock is an art teacher and part-time bus driver for the Devalls Bluff School District, a political subdivision of the State of Arkansas. The school district required Mr. Warnock to go to a local college sponsored by a Christian denomination

for in-service training meetings that included a prayer.  Charles Archer, the district superintendent, conducted prayers at mandatory teacher training meetings, in addition to displaying a personal Bible and a framed scriptural quotation in his office.  When Mr. Warnock asked Mr. Archer to stop praying at the teachers' meetings, he refused.  In response, Mr. Warnock filed a charge with the Equal Employment Opportunity Commission (EEOC).  After voluntarily abandoning that charge, he instituted this suit against Mr. Archer, various school officials, and the school district.  Mr. Warnock challenged the requirement that he attend meetings and training where prayers were recited, and he claimed that students, parents, and a fellow teacher harassed him because he filed the EEOC charge and the subsequent suit.  He was time-barred from making any Title VII claims, and his action rests entirely on § 1983 and alleged constitutional violations.

The district court concluded that prayers at mandatory faculty meetings and compulsory in-service training that began with prayer violated the establishment clause of the first amendment.  The court held, however, that the Bible and framed scripture verses in Mr. Archer's office, as well as religious jewelry and T-shirts worn by students and staff, were protected by the first amendment's free speech and free exercise clauses.  Furthermore, the court concluded that while there was evidence that students and fellow teachers harassed Mr. Warnock, school officials took appropriate action in response to each incident.  The court then issued an injunction barring the defendants from offering prayers at any meeting that Mr. Warnock is required to attend and from requiring Mr. Warnock to attend in-service training at denominational colleges where prayers are offered.[1]  In addition, the district court awarded Mr. Warnock $1,000 in compensatory damages, as well as attorney's fees.

---

[1]The district court also enjoined the defendants from offering or orchestrating prayers at graduation ceremonies as well as from placing or allowing others to place religious literature in Mr. Warnock's employee mailbox.  The district court's resolution of these issues is not before us on appeal.

On appeal, Mr. Warnock asks us to modify the injunction against the defendants, reverse the district court's decision that the harassment he suffered did not violate the establishment clause, and award him additional damages. In their cross-appeal, the defendants assert that their conduct did not violate the establishment clause and ask that we reverse the district judge's decision to grant Mr. Warnock attorney's fees.

## II.

The first amendment states that the government "shall make no law respecting an establishment of religion." U.S. Const. amend. I. As a threshold matter, we must determine whether the district court correctly concluded that this prohibition reaches prayers conducted by school officials at mandatory teacher meetings and mandatory in-service training that included prayers at a sectarian college. This is a question of law that we review *de novo*.

Although the cases are quite clear that government-mandated prayer for students in public schools is impermissible, *see, e.g., Lee v. Weisman*, 505 U.S. 577, 593-94 (1992), as is student-led and student-initiated prayer at public school functions, *see Santa Fe Indep. Sch. Dist.*, 530 U.S. 290, 295-98, 305-10 (2000), our task is complicated by the fact that the Court has not established a blanket rule against prayers at all government-sponsored functions. *See Marsh v. Chambers*, 463 U.S. 783, 792 (1983). Furthermore, although the Court announced three "tests" for establishment clause violations in *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971), it has often found it unnecessary to rely on *Lemon* in deciding later cases, *see, e.g., Lee*, 505 U.S. at 587; *Marsh*, 463 U.S. at 786-95; *Larson v. Valente*, 456 U.S. 228, 252 (1982), and has made it plain that it will not be confined to applying the *Lemon* principles in all cases "in this sensitive area." *Lynch v. Donnelly*, 465 U.S. 668, 679 (1984).

The Supreme Court has frequently dealt with the issue of prayers in school. *See, e.g., Engel v. Vitale*, 370 U.S. 421, 425 (1962); *Lee*, 505 U.S. at 580. In those cases, however, the Court has focused much of its attention on the possibility of coercing the participation of students in state-sponsored religion. *E.g.*, *id.* at 587. In the context of compulsory education laws, such a concern with coercion is natural, but in this case the relationship between Mr. Warnock and the school district is contractual, and he is clearly a strong-willed adult who is unlikely to be indocrinated by the religious activity of his employer. Mr. Warnock lays special emphasis on his feelings of exclusion and the offensiveness to him of the prayers. But while such subjective responses may be relevant on the question of damages, we do not believe that strictly speaking they go to the merits of the establishment clause issue. The government can permissibly engage in any number of activities that its citizens find deeply offensive without violating the Constitution.

We agree with the district court that the practices at issue in this case are unconstitutional, but we think that they are constitutionally infirm not because they offended Mr. Warnock but because they endorsed religion. The government, of course, may speak on a large number of different issues. The Constitution, however, forbids it from conveying the message that it decisively endorses a particular religious position. *See Lynch*, 465 U.S. at 682. We believe that prayers at mandatory teacher meetings and in-service training conveys such a decisive endorsement.

The defendants rely on our decision in *Brown v. Polk County, Iowa*, 61 F.3d 650, 658-59 (8th Cir. 1995), (en banc), *cert. denied*, 516 U.S. 1158 (1996), where we held that a county could not order an employee to desist from "any activities that could be considered religious proselytizing, witnessing, or counseling" without running afoul of the free exercise clause. They argue that the prayers at issue here are analogous to the protected activity in *Brown*. But this case is distinguishable on three grounds. First, *Brown* involved a free exercise challenge to a government prohibition of religious activity rather than an establishment clause challenge to ongoing

religious activity by the government itself. Second, virtually all of the activity at issue in *Brown* was clearly private speech: It involved personal statements by Mr. Brown about his own beliefs and personal religious effects in his office. Third, the prayers offered at government meetings in *Brown* were informal, sporadic, and spontaneous. *Id.* at 652-53. An objective observer of such behavior could not conclude that the government was endorsing Mr. Brown's faith.

In contrast, some of the prayers at issue here were offered in mandatory teachers' meetings by the official conducting the meetings, circumstances that would lead an objective observer to conclude that the government was explicitly endorsing the religious content of the prayers offered. The same is true of the requirement that Mr. Warnock attend in-service training at a religious college where prayers were offered as part of the training. This endorsement, rather than any offensive or coercive impact that the prayers had on Mr. Warnock, is what we believe makes them unconstitutional.

### III.

The resolution of Mr. Warnock's challenge to the scope of the district court's injunctive relief follows from the nature of the government's establishment clause violation. The district court enjoined the defendants from praying at mandatory meetings when Mr. Warnock was present and directed that Mr. Warnock be allowed to opt out of any in-service training where prayers would be offered. We review a district court's decision to issue an injunction for an abuse of discretion. *Shen v. Leo A. Daly Co.*, 222 F.3d 472, 477 (8th Cir. 2000). In this case, we conclude that the injunction should be modified.

The district court crafted its injunction so as to spare Mr. Warnock a potentially offensive confrontation with prayers at mandatory teacher meetings or in-service training. We think that the difficulty with this approach is that it either conceives of the constitutional violation in terms of Mr. Warnock's subjective feelings of offense,

or is premised on the proposition that the primary establishment clause violation in this case lies in the fact that Mr. Warnock was being coerced or religiously indoctrinated by the state. As we noted above, however, we believe that it is the government's endorsement of a particular religious message that constitutes the constitutional violation here, not the effects of official prayers on Mr. Warnock's psyche. Hence the district court's injunction does not cure the constitutional violation because it continues to allow the defendants to engage in conduct that violates the establishment clause so long as Mr. Warnock is not present. The meaning of the establishment clause, however, cannot turn on where Mr. Warnock happens to be when a government official engages in a prayer at an official function.

To the extent that the injunction embodies this mistaken view of the establishment clause, we conclude that it must be modified. *Cf. National Basketball Ass'n v. Minnesota Prof'l Basketball, Ltd. P'ship*, 56 F.3d 866, 870 (8th Cir. 1995). It is true, of course, that courts may use their equitable discretion to grant injunctions that do not reach every illegality at issue in a suit. As the Supreme Court has observed in the establishment clause context, "equitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Lemon*, 411 U.S. at 200 (footnote omitted). The decision to grant an injunction that does not reach all illegal behavior, however, must turn on a careful weighing of the equities in the case and highly situational judgments about judicial competence and the efficacy of a court order. *See*, *e.g.*, 1 Dan B. Dobbs, *Law of Remedies* § 2.9(5), at 242 (2d ed. 1993). In this case, there is nothing to suggest that the district court's injunction rested or could have rested on such a discretionary judgment. Hence, we remand the case with instructions to modify the injunction to preclude prayers at mandatory meetings regardless of whether Mr. Warnock is present.

IV.

We turn next to Mr. Warnock's argument that the district court erred in failing to grant him relief from religious harassment. Mr. Warnock asks that we increase the

award of compensatory damages to take into account the allegedly unconstitutional harassment that he suffered. We review the district court's factual findings for clear error and apply the law to Mr. Warnock's case *de novo.*

As a threshold matter, we note that some of the "harassment" that Mr. Warnock complains of involves actions that are constitutionally protected. He claims that personal religious effects – such as a framed psalm on the wall of Mr. Archer's office – were harassing. But people do not give up their free-exercise or free-speech rights when they become government employees. *See Brown*, 61 F.3d at 652-59. When their speech and acts can reasonably be attributed to the government itself, of course, the restrictions of the establishment clause apply. But when such activity is clearly personal and does not convey the impression that the government is endorsing it, the mere fact that it occurs in a government setting does not render it unconstitutional. *Cf. Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394-95 (1993). We believe that our decision in *Brown* controls here. In that case we held that religious items in the office of a county supervisor were protected by the free exercise clause. *Brown*, 61 F.3d. at 658-59. Because the personal religious effects of Mr. Archer and others are constitutionally protected under the free speech and free exercise clauses, we cannot hold that they simultaneously violate the establishment clause.

We have never squarely addressed the extent to which harassment by government employers can constitute an establishment clause violation. But our decision in *Brown* suggested that harassment could violate the free exercise clause, *Brown*, 61 F.3d at 654-55, and we can see no obvious impediment to holding that the harassment of dissenting employees could form part of an unconstitutional attempt by the government to establish religion. In any event, we conclude that no such harassment occurred in this case. The district court found that there was ample evidence that students and a teacher harassed Mr. Warnock because of his opposition to the defendants' alleged establishment clause violations. The district court also

found, however, on an ample record, that in each of the incidents that Mr. Warnock complained of the school officials took prompt disciplinary action.

Mr. Warnock argues that the remedial action by school officials was insufficient. He relies in large part on two incidents. First, there was a student who attempted to place a wooden cross outside Mr. Warnock's classroom. The student was suspended, but only for a few hours, and he was allowed to return to school the next day. We agree with the district court that school officials took sufficient action here. Certainly, their response was not so perfunctory as to constitute official endorsement of or indifference to the student's action. Furthermore, in light of the fact that the cross was removed before Mr. Warnock ever saw it, we cannot say that the first amendment requires a more draconian response by school officials to insure that the government distances itself from the student's actions. Nor are we persuaded that without more decisive action such ultimately unsuccessful student pranks were part of an attempt to coerce Mr. Warnock into compliance with state efforts at establishment.

Second, the parent of two elementary school children insisted that her children leave the classroom when Mr. Warnock entered to teach their art class. The children did so, and when Mr. Warnock complained to school officials, they refused to force the children to attend his classes. The actions of the children in leaving Mr. Warnock's classroom at their mother's instance do not themselves constitute state action that can violate the establishment clause. It is not clear what legal duty, if any, school administrators have under the state's compulsory education laws to force the students to attend Mr. Warnock's class. The Supreme Court, however, has held that even compulsory education laws must yield to the free-exercise claims of parents in rearing their children. *See Wisconsin v. Yoder*, 406 U.S. 205, 207 (1972). We do not hold that the first amendment requires that parents be allowed selectively to withdraw their children from teachers or instruction that they find religiously offensive. In light of the principles announced in *Yoder*, however, we cannot hold that the failure of

school officials to coerce such unwilling parents and children violates the establishment clause. Our confidence on this point is bolstered by the fact that the Supreme Court has repeatedly held that government attempts to accommodate private religious belief, even when not required by the free exercise clause, do not in themselves violate the establishment clause. *See Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 334 (1987); *see also Employment Div., Dep't of Human Res. of Ore. v. Smith*, 494 U.S. 872, 890 (1990).

Mr. Warnock makes reference to other perceived slights and personal fears, none of which is sufficiently severe to raise a constitutional concern. In sum, we hold with the district court that Mr. Warnock suffered through several unconstitutional prayers by school officials but did not suffer from any unconstitutional harassment. Hence, we affirm the district court's award of compensatory damages.

V.

The defendants argue that the district court erred in awarding attorney's fees to Mr. Warnock. Under 42 U.S.C. § 1988(b),"[i]n any action or proceeding to enforce ... [§] 1983 ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." We review the district court's decision for an abuse of discretion. *See Rural Water System #1 v. City of Sioux Center*, 202 F.3d 1035, 1039 (8th Cir. 2000), *cert. denied*, 531 U.S. 820 (2000).

The defendants first maintain that Mr. Warnock was not a prevailing party. This argument is without merit. In *Farrar v. Hobby*, 506 U.S. 103, 113 (1992), the Supreme Court made clear that all that is required to be a prevailing party is that the legal relationship between the litigants be altered in favor of the party in question. Hence, Mr. Warnock clearly qualifies as a prevailing party: As a result of his suit, the defendants became obligated to pay him $1,000 in compensatory damages, and became subject to an injunction in Mr. Warnock's favor.

The defendants also maintain that the award of fees to Mr. Warnock was not reasonable, because his recovery was small in comparison to his original prayer for relief and because he needlessly prolonged the length (and hence the cost) of the proceedings.

In *Farrar*, 506 U.S. at 112-16, the Supreme Court held that a merely technical or *de minimis* victory might form a reasonable basis for denying an award of fees. There the Court determined that an award of one dollar in nominal damages after ten years of litigation was too slight a victory to merit fees. *Id.* at 114-16. In contrast, Mr. Warnock received a real (if modest) compensatory award, as well as injunctive relief. Such an award is not so slight as to render the district court's decision to award fees an abuse of discretion.

It is true that we must consider the prevailing party's "degree of success" in determining the reasonableness of an award of attorney's fees. *See, e.g., Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 772 (8th Cir. 2000). When a party fails to prevail on some of its claims and those claims are not intertwined with the claim that he or she did prevail upon, then attorney's fees should not be awarded for work on the non-prevailing claims. *Id.* at 772. This, however, is precisely the principle that the district court applied in Mr. Warnock's case, reducing the prayed for billable hours by half because he did not prevail on his harassment claims. We detect no error here.

The issue of Mr. Warnock's role in drawing out the litigation strikes us as quintessentially a matter for the district court's discretion. In light of their need to manage the flow of litigation in their courtrooms, we think that district courts are uniquely situated to judge the reasonableness of various tactics used by attorneys and parties who appear before them, and that such matters are best left to their sound discretion. The defendants point to nothing that would lead us to a conclusion that the district court abused its discretion in the present circumstances.

-11-

## VI.

We remand the case to the district court for further proceedings not inconsistent with this opinion.

_____